## WHITE *vs.* WAGER.

At common law, a deed of lands, from a married woman to her husband, is void, and passes no title; and the act of April 11th, 1849, "for the more effectual protection of the rights of married women," does not remove the common law disability of the wife, so far as to authorize her to convey her lands directly to her husband. CAMPBELL, J. dissented.

THIS was an action for breach of a covenant contained in a deed; and was submitted to the court upon a statement of facts agreed upon by the parties.

*M. Lyon,* for the plaintiff.

*T. C. Love,* for the defendants.

MASON, J.   At common law a deed of lands from the wife
to her husband is void, and passes no title.   (2 *Kent's Com.*
129.   *Martin* v. *Martin,* 1 *Greenl. R.* 394.   3 *E.* 63.)   The
only question presented for our adjudication in this case is
whether the act of April 11, 1849, removes the disability of
coverture under which the wife labors at common law, so far
as to authorize her to convey her lands directly to her husband.   This statute declares that any married female may
take by inheritance, or by gift, grant, or devise or bequest,
from any person other than her husband, and hold to her
sole and separate use, and convey and devise real and personal property, and any interest or estate therein, and the
rents, issues and profits thereof, in the same manner and
with like effect as if she were unmarried.   (*Laws* 1849, *p.* 528,
*sec.* 3.)   This statute in general terms declares that she may
convey and devise real and personal property in the same
manner and with the like effect as if she were unmarried.
The defendant's counsel claims and insists that this statute
authorizes her to convey her real estate directly to her husband.   I do not think it does.   It is a familiar principle that
statutes are to be construed in reference to the principles of
the common law, for it is not to be presumed that the legislature intended to make any innovation upon the common
law, further than the case absolutely requires.   (1 *Kent's
Com.* 463, 3d *ed.*)   This has been the language of the courts
in every age.   It is said, also, that four things are to be considered in the interpretation of all statutes:   1st. What
was the common law before the act ?   2d. What was the
mischief against which the common law did not provide ?
3d. What remedy has the legislature provided to cure the
defect ?   and 4th. What was the true reason of that remedy ?   The common law, before the passage of this act, held
a married woman disqualified to take and hold real and personal property to her sole and separate use independent of
her husband.   The personal property which she received by
inheritance, gift or bequest, became absolutely her husband's,

and her husband, *jure uxoris,* was entitled to take the rents and profits of her lands, and he was *jure uxoris* seised of a freehold estate therein during their joint lives. The wife was excepted from the statute of wills, and she could neither devise her real estate, nor bequeath her personal property, and she was incapable of conveying her real estate unless her husband joined with her. These were great disabilities under which the married woman labored, and they were by the legislature regarded as evils entailed upon her by the common law, which ought to be removed ; and to remove these general disabilities, this statute was passed by which she is capacitated, as we have seen, to take and hold to her sole and separate use both real and personal property the same as if she were unmarried, and by which capacity is given to her, in general terms, to convey and devise the same in the same manner and with the like effect as if she were unmarried. This general incapacity to take and hold to her sole and separate use, and this general incapacity to convey her real estate by grant and devise, were the mischiefs against which the common law did not provide, but which it upheld ; and the evils which the legislature set about curing were these defects in the common law as they regarded them. The true reason of this remedy is well expressed in the title of the act, which declares the act to be "an act for the more effectual protection of the property of married women." There were certain other disabilities at common law under which both husband and wife labored at the time of the passage of this act, and which I have no idea the legislature intended to interfere with. They were so far regarded as one, in the law, that they were incapable of making any valid contract between them. This was so truly the case that a deed of lands from either one to the other was at common law absolutely void and passed no title. This disability of husband and wife was not the mischief which the framers of this statute intended to provide against, and this statute does not in the least remove this marital disability. The statute has in ex-

White *v.* Wager.

press terms preserved it on the part of the husband, by declaring that the wife may take and hold from any person other than her husband, and it would be extraordinary to preserve the disability in one party and remove it from the other; and especially so in a statute like this, which was enacted for the protection of the property of married women, to declare in effect that the husband cannot make a conveyance of his property to his wife, but that the wife may convey hers to him. I fear, if this is the construction to be put upon the act, it will utterly fail to accomplish the purposes intended by its framers. The husband will be pretty likely to get the wife's property, but the wife will get none of his. There certainly is no propriety in giving such a construction to the act; and it is a familiar rule in the construction of statutes that where the intent is doubtful, the consequences resulting from a particular construction are to be regarded. (*Smith on Statutes, p.* 693, § 548.) The English rule of construction is sound, which declares that the intent and meaning of the legislature must be found partly from the words of the statute, and partly from the mischief which the statute was intended to remedy. (*Smith on Stat. Construction, p.* 821, § 703.) That intent sometimes becomes so controlling that it is found necessary to expound it against the letter, in order to preserve the intent of the statute; for a thing which is in the letter is not within the statute, unless it be within the intention of the makers. (*Smith on Stat. Con.* 820, § 701. *Bacon's Abr. stat. II.* 15 *John.* 380. 5 *id.* 449. 2 *Burr. R.* 786. 3 *B. & A.* 266, 212. *Plowden,* 18. 4 *Gill & John.* 6.) The rule conseqeuntly is, that when a case arises which it is clear is out of the mischief intended to be guarded against, the letter of the statute will not be deemed the intention of the lawgiver, but the spirit of the statute will control the letter. (*Fars* v. *Marteller,* 2 *Cranch's R.* 10.) If, therefore, the letter of this statute is broad enough to remove all these common law disabilities from the wife, so as to authorize her to convey her

lands directly to her husband, it must not be so construed, for the reason that such a construction is not within the spirit of the act—is not within the mischief to be guarded against. The principle precisely applicable to the case at bar is well stated by the court in *Lessees of Brewer* v. *Blougher*, (14 *Peters' R.* 178,) where the court says, it is undoubtedly true it is the duty of the court to ascertain the meaning of the legislature from the words used in the statute and the subject matter to which it relates, and restrain its operations within narrower limits than its words import, if the court are satisfied that the literal meaning of its words would extend it to cases which the legislature never designed to include in it. (*Smith on Stat. p.* 822, § 904.) This principle controls the case at bar, even if the letter of the statute should be held to include the case under consideration; and besides, as we have already seen, in a statute it is not to be presumed that the legislature intended to make any innovation upon the common law, further than the case absolutely required. (1 *Kent's Com.* 463, 3d ed.) Now I take it to be very clear that the mischief which this statute was intended to guard against did not require that the legislature should authorize the wife to convey her lands directly to her husband. The very contrary is the case, as we have seen already, for the statute was enacted, as its title declares, for the more effectual protection of the property of married women; and such an authority, conferred upon her, instead of being one of protection to her, would be the very reverse of it. It is in the very nature of this relation of husband and wife that the husband should acquire an almost unlimited control over the wife. It is for this reason that our statutes have declared that when the wife joins with her husband in the conveyance of her right of dower in his lands, she shall be examined before a commissioner, separate and apart from her husband, and state that she executes the same freely and without any fear or compulsion of her husband. This influence and control of the husband over the wife is regarded as so supreme, at common

White *v.* Wager

law, that she is acquitted from most criminal offenses committed by her in the presence of her husband, upon the presumption which the common law indulges, that she acted under the coercion of her husband. (1 *Mass. R.* 476, 391. 10 *id.* 152. 2 *Stark. Ev.* 399.) It is in the very nature of this relation that the wife should be confiding in her husband and solicitous to meet the desires,. wishes and expectations of the husband; and both parties soon become unhappy in this relation when such is not the case. The present generation have so long been schooled and educated in the principles of the common law, in which the wife's legal capacity to hold property, make contracts and transact business has been wholly unrecognized, that the opinion is very prevalent with heads of families that the wife *is* rightly placed in such relation of incapacity; and the husband therefore will be very likely to think that it is right and proper that his wife should make over the property. to him, for he can manage and control it better than the wife. And I think that I do not state the case too strongly when I assert that the husband does and will have a controlling influence over the wife in these respects. Acting upon the belief that this act, which deprives the husband of all these important rights of property which the common law has heretofore recognized as belonging to him, is unwise if not wrong, he will seek the control of the property through the consent of the wife, and the consequence will be, in very many cases, he will be very sure to acquire it, and, if he does not, the wife will be subjected to very disagreeable importunities; and if she stands out and refuses, she will be very likely to incur the displeasure of her lord, and the matter will many times, I have no doubt, end in bickerings destructive to the peace and happiness of families. I can hardly think the legislature intended to make so unwise an enactment in a statute passed for the professed object of more effectually protecting the property of married women. If this statute is to be so construed, the title of the act ought

to be changed; for the act itself would be destructive of the object declared in the title. I am of opinion, for the reasons stated, that no such construction reasonably can, or should, be put upon this act. But I maintain, in the next place, that the words of the act itself do not remove the common law disability of the wife to convey her lands to her husband. All the statutes declare is, that she may "convey in the same manner and with the like effect as if she were unmarried." She may convey in the same manner; that is, she may convey by deed under seal, and her acknowledgment of the conveyance may be the same as a single woman's. She may convey with a like effect; that is, the same effect shall be given to her conveyance made and executed in the same manner, that is given to the deed of a single woman. I see nothing of intention in all this to authorize her to convey to her husband; nothing to remove the common law disabilities which exist between them to contract with each other. She may convey in the same manner and with the like effect as a single woman. The statute only speaks of the manner and effect of her conveyance, but is not declarative of the cases in which, or the class of persons to whom, she may convey; and when the legislature knew that she was utterly disqualified to make any contract with her husband, or any conveyance to him, if they had intended to remove this disability and authorize her to do so, they would have expressed their intent in plainer language than this. I insist that in declaring that she may convey in the same manner and with the like effect as a single woman, there is no intent expressed, from the plain meaning of the words, to authorize her to convey to her husband. The case of husband and wife is not embraced in the language or words of the sentence. The effect and manner of a single woman's deed to her husband has never yet been considered in the law, and never will be, for the case can never arise. I am entirely satisfied that this deed from the wife to her husband is absolutely void at common law and under this statute, and passed no title, and

White *v.* Wager.

consequently that the plaintiff is entitled to recover the. consideration expressed in the deed for this breach of covenant. The covenant of seisin was broken on the delivery of the deed, and the plaintiff is entitled to recover the consideration paid, with interest. The defendant's counsel claims and insists that if this deed is void at common law, it is the duty of this court to uphold it in equity. This cannot be done. There is no principle of equity upon which such a deed can be upheld and made better in equity than it is at law. Equity never makes a purely voluntary deed without consideration better than it is at law. (*Fonbl. Eq., Book* 1, *ch.* 5, § 2. 1 *Vernon,* 429. 1 *Chan. R.* 84. 3 *Brown's R.* 13. 2 *Ves.* 271. 1 *John. Ch. R.* 336. 1 *Story's Eq.* § 196. 4 *Ves.* 802. 2 *Dessaus.* 191.) Equity will only interfere to make a conveyance good which is not good at common law, when the conveyance is based upon a consideration. (*See cases above;* 7 *John. Ch. R.* 57.) There must be judgment for the plaintiff, for the consideration expressed in the deed, and interest, with costs, to be taxed.

BALCOM, J. concurred.

CAMPBELL, J., (dissenting.) The only question presented in this case is whether a married woman can convey her real estate directly to her husband. The wife of the defendant "not being indebted to any person, without being influenced by the said defendant, but in good faith and without fraud, freely and voluntarily, as her own act and deed, with intent to and for the purpose of giving the said land to the defendant, and of vesting the title to the same in him, in view and in the prospect of immediate death to her known, and being of sound mind and understanding, did sign, seal, acknowledge, execute and deliver, in due form of law, to the defendant, her husband, a quitclaim deed, conveying to the defendant, in his actual possession then being, the said land &c., and on the next day thereafter departed this life, leaving the

said deed in full force and effect, and also leaving her surviving two infant children."

Upon the foregoing agreed state of facts the plaintiff claims that the deed is utterly void and of no effect, while the defendant insists that "the deed from his wife is a good deed of gift *mortis causa,* both at law and equity." The deed was executed the 15th of ᵒAugust, 1849; and as to part of the land, the wife became the owner by inheritance from her mother, after the passage of the act of 1848, and the balance having been inherited from her father several years previous.

"By marriage, the husband and wife are one person in law, (1 *Inst.* 112;) that is, the very being or legal existence of the woman is suspended during the marriage, or at least is incorporated and consolidated into that of her husband, under whose wing, protection and cover, she performs every thing, and is therefore called in our law French, a 'femme covert.'" (*Jacob's Law Dict. Baron and Feme.*) Such was the strict rule of the common law, and upon that principle of union of persons in husband and wife have depended almost all the legal rights, duties and disabilities which either of them acquire by or during the marriage.

For this reason, a man cannot grant any thing to his wife, or enter into a covenant with her; for the grant would be to suppose her to possess a distinct and separate existence. (*Story's Equity,* § 1367.) Under the Roman law, marriage was said to be *conjunctio maris et fœminæ; consortium omnis vitæ divini et humani juris communicatio*—that joining together of the male and female, the fellowship of a whole life and the union of both the divine and human law. Yet, under the Roman civil law, more liberal rules prevailed in relation to a married woman's rights of property; and following these rules, courts of equity, at an early day, began the introduction of a more liberal system to meet the wants and necessities of a higher and perhaps a better civilization, and which were not provided for under the stern and unbending rules of the English common law. "Courts of equity,

for many purposes, treat the husband and wife as the civil law treats them, as distinct persons capable, in a limited sense, of contracting with each other, of suing each other, and of having separate estates, debts and interests. (*Story's Eq.* § 1368.) But to protect the property of the wife from the operation of the rules of the common law, the intervention of trustees became necessary; and complicated forms of conveyances, uses, trusts, powers and appointments, followed in the train. Our recent statutes, while embodying many of the principles and rules of the courts of equity, have swept away the cumbrous appendages, and declared that a married woman may hold in her own name, to her own use, her separate estate, both real and personal, not subject to the disposal of her husband, and not liable for his debts; and may convey and devise the same in the same manner and with like effect as if she were unmarried.

It would seem as if nothing more was necessary. But while it is admitted that she has almost unlimited power of disposing of her estate, it is said that the husband cannot be the donee or grantee, because he and the wife are but one person in the law, and a conveyance to him would therefore be but a conveyance to herself, which it is manifestly impossible for her to make. And yet at all times, or for many years, in this state, and long prior to the acts of 1848 and 1849, a wife could unite with her husband in a deed of her real estate to a third party, and that third party reconvey to the husband, thus vesting complete title in him; and such a conveyance, in cases free from fraud or undue influence, would be upheld. A wife could give her property to her husband, as was held in *Jaques* v. *The Methodist Church*, (17 *John.* 548.) And it was held in other cases, that when there were settlements, and the power of appointment was given to the wife by deed, she might make her husband the appointee, in cases likewise free from fraud. It would seem, therefore, that it was worse than useless to hold that the wife may not do directly that which it is clear she may do indi-

rectly.   The maxim of the common law, that the husband
and wife are but one person in the law, so far as the wife's
separate estate is concerned, is no longer applicable, and is a
mere legal fiction.   It is still however, in many respects,
applicable and in force.   Few in our land, of right thinking.
persons, would be willing to see the rules of the common
law, which regulate the domestic relations, materially altered.
The husband is still the head of the family and master of the
household ; within his domains he is king, and if he rules
rather by the *potior affectio* than by the *potior vis,* so much
the better.   As representative, he unites for many purposes
the interests of both himself and his wife.   I have not over-
looked the provisions of the act of 1849, that any married
female may take by inheritance or by gift, grant, devise or
bequest, from any person other than her husband.   She could
always take from him, before these statutes, by devise and
bequest directly, and indirectly by gift or grant.   She may do
so now, but the property so obtained by gift or grant indi-
rectly she may not hold and enjoy and convey to the full
extent provided for in these statutes.   It may well be that
the legislature thought it not prudent to afford additional
facilities for the husband to vest his estate in the wife, who
could not make binding contracts except as they were charges
upon her estate.   But however this may be, it does not
necessarily restrict the right of the wife to convey to her hus-
band her own separate estate.   The gift in this case can
hardly be called, as claimed by the defendant's counsel, a
*donatio causa mortis.*   Such gifts have reference solely to
personal property, such as the dying person may deliver or
cause to be delivered.   It has been held to include bonds and
other securities payable to the giver ; and in *Wright* v. *Wright,*
(1 *Cowen,* 598,) a promissory note, executed by the dying
man and given to his brother, was held a charge against the
estate.

      The definition given in *Prince* v. *Hazleton* by the chan-
cellor, in his opinion, (20 *John.* 514,) was this : " A *donatio*

*causa mortis* is where a man lies in extremity, or being surprised by sickness, and not having an opportunity of making his will, but lest he should die before he could make it, gives away *personal* property with his own hands. If he dies, it operates as a legacy. If he recovers, the property reverts to him." So far as I have been enabled to find authorities or definitions, these gifts have been confined to personal property or choses in action—something which could be delivered into the hands of the donee. The *donatio causa mortis* was in many respects like a nuncupative will, and both have generally been carefully considered and examined before effect has been given to them. In the case before us, however, there was a deed duly executed and acknowledged with as much care and form as would have attended a written will; and it would operate if at all, unless put in escrow, upon delivery. At the same time, in point of fact, it was given in contemplation of immediate death, and which death took place on the following day. Now it was said that the reason why a wife could take from her husband by devise, when she could not take by direct grant, was that the death of the husband restored her legal individuality, and that the devise took effect only after his death; and consequently, at the time of the vesting of the estate, the wife was restored to her legal existence, and capable of taking as a femme sole. Still, both in devises by written wills and gifts, in contemplation of immediate death, of personal property, they were alike dependent as to their becoming operative, on the death of the devisor or donor. How far a deed, executed and placed in escrow, to be delivered in case of death, might be considered as a *donatio causa mortis*, it is not necessary to determine, as the deed in the present case was delivered at the time of execution, as I infer from the case. Practically it operated as a devise; but I am disposed to place my decision on broader grounds, and to hold that the acts of the legislature of New York, which have secured to a married woman her own separate estate, free from the disposal of it by her husband, or

White *v.* Wager.

by his creditors, and giving to her unlimited powers of disposition and control over it, saying that she may manage and dispose of it as if she were an unmarried woman; also discharging the husband from any personal liability for the debts of the wife contracted previous to the marriage—that these acts, all taken together, have abrogated the old rule of the common law. They recognize and declare the distinct legal existence of the wife, as regards her separate estate. As to her estate, her identity is no longer merged in that of her husband.

It has been considered one of the beauties of the common law, one of the advantages of its rules over codes enacted by legislatures, that those rules could be modulated, as it were, by judicial legislation, and made to conform to the changing customs and the more general legislation of the country. When the legislature has distinctly spoken through its laws, it is the duty of courts to conform. In several distinct acts in different years, the legislature has provided for the rights of married women as to their separate estates. They declare that she may give her property to whom she pleases, the same as if she were an unmarried woman. There is no good reason why she may not give it to her husband, as well as to a stranger; and there is no reason why she may not as well convey directly to him as to unite with him in a conveyance to a third party, with the agreement that the third party is to reconvey to the husband.

I am of the opinion that the deed, in this case, from the wife to the husband, vested the legal estate in him, and that there should be judgment for the defendant in this case.

Judgment for the plaintiff.

[Broome General Term, January 24, 1860. *Mason, Balcom* and *Campbell,* Justices.]