SPENCER COLEMAN, APPELLANT, *v.* ISAAC C. BURR, ELLEN A. BURR AND FRANKLIN P. SMITH, RESPONDENTS.

*Husband and wife — right of the former to the household services of the latter — when an agreement to pay her therefor is void as against his creditors.*

In 1869 the defendant Burr entered into an agreement with his wife by which he agreed to pay her five dollars a week for services to be rendered by her in nursing and taking care of his mother, who was then aged, paralytic and helpless, and who resided in his house under an agreement by which he had undertaken to support her during her life in consideration of her having conveyed certain land to him. At the time of the mother's death there was due to the wife for such services the sum of $2,175, in payment of which the husband conveyed to her through the intervention of a third person certain real estate, including that received from his mother. At the time of making the conveyance Burr was, to his own knowledge, insolvent and his creditors were pressing him for payment. The agreement between Burr was fairly and honestly made, with little expectation that the life of the mother would be so greatly prolonged, and the sum agreed upon was no more than a fair and reasonable compensation for her services.

This action was brought by a judgment creditor of the husband, after the return of an execution unsatisfied, to set aside the conveyance to the wife as fraudulent and void.

*Held,* that the services so rendered by the wife belonged to her husband, *jure mariti,* and that, as against his creditors, they constituted no valid consideration for the conveyance, and that the same should be set aside.

APPEAL from a judgment in favor of the defendants, entered on the report of a referee.

*Isaac S. Signor,* for the appellant.

*H. D. Tucker,* for the respondents.

SMITH, J.:

The plaintiff is a judgment creditor of the defendant Isaac C. Burr, and he brings this action to set aside a conveyance of about sixty-two acres of land made by Burr to his wife, through the intervention of a third person, on the ground that such conveyance was without consideration, and was executed with intent to defraud Burr's creditors. The deeds by which the transfer of title from Burr to his wife was effected expressed the nominal consideration of one dollar, and the referee found that the intent and object of making them was to transfer the premises to Mrs. Burr in payment and satisfaction of a claim which she then had against her husband, for labor and services rendered by her in nursing and taking care of his mother, who was aged, paralytic and helpless, under an agreement by the husband to pay his wife for such services at the rate of five dollars a week. The mother lived in Burr's house, and the services were performed there, Burr having previously engaged to support his mother in consideration of the conveyance by her to him of twenty-six acres of the land above mentioned. The agreement with the wife was made in 1869, and the mother lived eight years and four months thereafter. The referee found that the wife was entitled to the sum of $2,175 for her services thus rendered. At the time of the conveyance to his wife, Burr was insolvent and his creditors were pressing him for pay. The referee found that the agreement between Burr and his wife was fair and honest, and made with little expectation that the life of the mother would be-

so greatly prolonged, considering her advanced age, disease and helpless condition; and that the sum agreed upon was no more than a fair and reasonable compensation for such services.

The referee held, as matter of law, that the agreement on the part of the husband to pay his wife for such services was an abandonment of his marital right to claim such services, and created a valid contract in law and constituted the amount due to the wife for such services a valid debt against her husband, which was a sufficient consideration in law and equity for the said conveyance; and he held the deeds valid and ordered that the complaint be dismissed, with costs.

It appears from the findings of the learned referee that the services of the wife, which formed the consideration of the conveyance, were of an unusually onerous and disagreeable character. But they were performed within her husband's house for a member of his household whom he was bound to support. Not only had he agreed to maintain his aged mother in consideration of her conveying to him that which, for aught that appears, was all the property she possessed, but he was liable by statute to support her, in case she had had no means of her own. If the services rendered by the wife in this instance differed in any respect from those falling within the range of ordinary domestic duties devolving upon every wife, who is the mistress of a household, the difference is in degree only, and not in kind. If a good consideration exists in this case, it is difficult to see why the result would not have been the same if the nursing of the invalid had not required the performance of burdensome and disgusting offices, or had not been prolonged beyond the expectation of the parties, or if the wife's services had consisted in nursing her husband or one of his children, being a member of his family.

The question seems to be, therefore, whether an agreement by a husband to pay his wife for domestic services to be rendered in his house, in and about the care of his family, constitutes such a consideration as, *against creditors*, as will support a conveyance made by the husband to his wife. That such an agreement was void at common law is a familiar doctrine. It lacked consideration, since the services and earnings of a married woman belonged to her husband. Equally familiar is it that equity would not interfere to sustain a

deed void at law, which was wholly without consideration. (*White*
v. *Wager*, 32 *Barb.*, 250, and cases there cited by MASON, J., 257;
S. C., affirmed 25 N. Y., 328, *per* DENIO, J., 334; cases cited by
KENT, Ch., in *Shepard* v. *Shepard*, 7 Johns. Ch., 57, 60.) A con-
veyance founded on an agreement of that character, being purely
voluntary, was void as against creditors at law and in equity.

But it was held by the learned referee, and is now contended by
the respondent's counsel, that modern legislation in this State has
so far changed the common law as that the agreement in this case
was valid and the wife's services under it constituted a good con-
sideration for the conveyance to her, at law and in equity, even as
against her husband's creditors. That result is supposed to have
been effected by the act of 1860 " concerning the rights and liabili-
ties of husband and wife," and notably by the provision that a
married woman may " carry on any trade or business and perform
any labor or services on her sole and separate account, and the earn-
ings of any married woman from her trade, business, labor or serv-
ices shall be her sole and separate property and may be used or
invested by her in her own name." (Laws 1860, chap. 90, § 2.)
The act, of which that provision is a part, and other acts in *pari
materia*, have been the subject of judicial interpretation in many
reported cases, but none of them go far enough to uphold the deci-
sion now under review. On the contrary, it was held by the Court
of Appeals in Filer's case that, notwithstanding the statutes referred
to, the services and earnings of a married woman not engaged in
trade, business or labor on her own account belong to her husband,
and on that ground the court decided, in an action brought by a
married woman to recover for personal injuries caused by the
wrongful act of another, that it was error to charge the jury that
her inability to labor caused by the injury constituted one of the
items of damage. (*Filer* v. *The N. Y. Central R. R. Co.*, 49
N. Y., 47.) In *Brooks* v. *Schwerin* (54 N. Y., 343) the Commis-
sion of Appeals held that under those statutes the services of the
wife in the household still belong to her husband, and so far as an
injury to her disables her from performing such services the loss is
his, and he and not she can recover therefor. But when she labors
for another her services and earnings no longer belong to her hus-
band but to herself, and so far as she is disabled from performing

such service she can recover for the loss. In that case the plaintiff, a married woman, before the injury, took charge of her family, and she also worked out by the day earning one dollar and twenty-five cents per day. It was held that the refusal of the judge to charge as requested that she could not recover for her time and services was not error, the request having proceeded upon the idea that all her time and services belonged to her husband, but that if the defendant had requested a charge that she could not recover for the loss of services to her husband in the discharge of her domestic duties the request could not properly have been refused. *Reynolds* v. *Robinson* (64 N. Y., 589) was an action to recover the value of services rendered by the plaintiff and his wife in caring for the defendant's testator, James Hill. The plaintiff's wife, several years before her marriage, had been adopted by Hill as his daughter. Hill, during several of the last years of his life, lived with the plaintiff paying for his board. For eight years he was afflicted with a cancer, and by reason thereof required a great deal of care, nursing, bathing and washing of linen and clothing. Plaintiff's wife during that time, save for a short period when a nurse was employed, rendered those services which were performed at the request of Hill who promised to pay what they were worth, and as the evidence tended to show, to compensate for them by making a provision for plaintiff's wife in his will. He bequeathed to her $1,500. The services were found by the referee to be worth $4,342. The court held that as the plaintiff's wife was in charge of his household and, as part of her household duties, rendered the services to a person in her husband's house by contract with him, she was then working for her husband and not for herself or on her separate account. Certain remarks in the opinions delivered in the two cases last cited, to the effect that in certain cases, supposed by way of illustration, the wife, by special agreement with her husband, would be entitled to recover for her services rendered in taking care of third persons within his house, are relied upon by the learned referee. There is nothing in the remarks themselves or in the facts of the cases in which they were made, to warrant the supposition that they were intended to apply to a case affecting the rights of the husband's creditors. The question to be decided in each of those cases was whether the husband or his

wife could maintain the action. Doubtless, as between themselves, a husband may relinquish to his wife his right to her earnings, even in his household, and she may hold them to her separate use. Such was always the rule in equity when there was no reason to suspect fraud and the gift amounted to no more than a reasonable provision for the wife. (2 Story's Eq. Jur., 1375, and cases cited in note 4.) But in such case the gift was good only as against the husband and not as against his creditors. (Id.) Nor was a grant of all the husband's estate to the wife operative even in equity (2 Story's Eq. Jur., § 1374), as it could in no just sense be deemed a reasonable provision for her. Here it is to be presumed that Burr transferred to his wife all his property liable to the payment of his debts. The referee, on being requested to find that at the time the conveyances of the land were made Burr also transferred to his wife all his unincumbered personal property liable to execution, reported that he presumed the fact to be substantially so, but that he thought it was not distinctly proved. However that may be, the fact is found that shortly after the deeds were executed, executions were issued on the plaintiff's judgments against Burr, and were duly returned unsatisfied. This, taken in connection with the fact that he was insolvent to his knowledge when he executed the deed, and that his creditors were then crowding him for pay, furnishes presumptive evidence that the transfer to his wife covered all his property liable to execution. The cases already referred to certainly do not, by adjudication or *dictum*, sustain this transaction, and it may be safely asserted that the judgment appealed from is without precedent. Indeed the learned referee in his opinion concedes that it is so.

The construction of the statute is then an open question. Upon a reasonable interpretation of it, can the conveyance from Burr to his wife be upheld as against his creditors? With due respect for the opinion of the learned referee by whom the case was tried, I am of the opinion that the statute does not justify it.

All lawyers know that the rule of the common law that the services and earnings of a married woman belonged to her husband was but one of the many outgrowths of the doctrine that, by marriage, the husband and wife became one person in law. The extent to which that doctrine has been modified by legislation in this State

is, that a married woman may now acquire, hold, manage and control a separate estate, may carry on business on her own account, may appropriate to herself her earnings the same as if she were *sole,* and may sue and be sued in reference to all matters relating to her separate property; but she is still a wife, and, I apprehend, she owes duties to her husband, as he continues to owe duties to her. As he is still bound to support her and the children of their marriage, notwithstanding she may have an estate of her own, so it cannot be doubted that she is still bound to live with him and to care for the domestic affairs of his house. Whatever may be the effect of the legislation referred to, I suppose it was not designed to break up the institution of the family or to weaken its ties. If it was not so intended, it would seem that the right of the wife to engage in business on her own account must be subordinate to the exercise, in a reasonable degree at least, of the duties she still owes to her husband as the overseer and manager of his household. Can she lawfully abandon those duties or seriously neglect them, to the discomfort and detriment of her husband and his family, in order to devote her whole time and attention to her separate trade or occupation? Can she lawfully insist upon being paid as a condition of performing domestic services for her husband or his family in his house? Either the statute has given her that right as to all ordinary domestic services, or it has given it as to none, however disagreeable or arduous they may be. The statute makes no distinction on account of the peculiar character of the services as to the right of the wife to compensation, and the law, as it stood before the statute, made no such distinction. (*Whitaker* v. *Whitaker,* 52 N. Y., 368, *per* PECKHAM, J., 371.) But Mrs. Burr had no separate estate, and was carrying on no separate business which required her attention. Her husband's mother lived in his house, ate at his table, was supported by him and must be regarded as having been a member of his family. The wife's services in nursing and taking care of her were performed in connection with her other household duties, and they were performed for her husband and at his request, and not for or on account of any third person.

I am of the opinion that the services thus rendered by her belonged to her husband, *jure mariti,* and that, as against his cred-

itors, they constituted no valid consideration for the conveyances in question.

The judgment should be reversed and a new trial ordered, costs to abide event.

TALCOTT, P. J., and HARDIN, J., concurred.

So ordered.