[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 67 
Several questions have been presented and elaborately argued, but the most important of these upon the merits is whether the commissioners erred in estimating a portion of the premiums received upon unexpired policies, as surplus earnings.
The commissioners did estimate as personal property belonging to the company, as I infer from their return, fifty per cent of such premiums. The whole amount of such premiums was something over $500,000, and it was estimated that one-half thereof would discharge the liability of the company thereon, and in arriving at this result, the commissioners adopted the estimate of the company itself, in its last return to the insurance department. The statute provides that monied corporations shall be liable to taxation on a valuation equal to the amount of their capital stock paid in, and their surplus earnings, (less ten per cent of such surplus).
I do not understand that it is denied, but that the portion of these premiums estimated by the commissioners, was property in the hands of the relator, over and above its capital, nor but that the rule adopted of ascertaining the contingent liability of the company upon unexpired risks, was just, and in accordance with the practice of this and other companies similarly situated. But the learned counsel for the relator insists that the general insurance act of 1853, as amended from time to time, contains a legislative declaration *Page 69 
which in effect excludes the whole amount of premiums upon risks not terminated, from being estimated as any part of the surplus profits or earnings of an insurance company for the purpose of taxation. As so much stress is laid upon this statute the whole section is inserted.
"Section 12. It shall not be lawful for the directors, trustees, or managers of any fire insurance company to make any dividend, except from the surplus profits arising from theirbusiness; and in estimating such profits there shall be reservedtherefrom, a sum equal to the whole amount of premiums onunexpired risks and policies, which are hereby declared to beunearned premiums; and also, there shall be reserved all sums due the corporation on bonds and mortgages, bonds, stocks and book accounts, of which no part of the principal or the interest thereon has been paid during the last year, and for which foreclosure or suit has not been commenced for collection, or which after judgment obtained thereon shall have remained more than two years unsatisfied, and on which interest shall not have been paid; and also, there shall be reserved all interest due or accrued and remaining unpaid; provided always, that any company may declare dividends not exceeding ten per cent on its capital stock, in any one year, that shall have accumulated and be in the possession of a fund, in addition to the amount of its capital stock, and of such dividend, and all actual outstanding liabilities, equal to one-half of the amount of all premiums on risks not terminated at the time of making such dividend. Any dividend made contrary to these provisions shall subject the company making the same to a forfeiture of its charter, and each stockholder receiving it to a liability to the creditors of such company to the extent of the dividend received, in addition to the other penalties and punishments in such case made and provided. This section shall not apply to the declaration of scrip dividends by participating companies; but no such scrip dividends shall be paid except from surplus profits, after reserving all sums as above provided, including the whole amount of premiums on unexpired risks. The word *Page 70 
`year,' whenever used in this section, shall be construed to mean the calendar year."
The first suggestion that occurs to the mind on reading this statute, is that it is incongruous, and not in harmony with itself. The first part of the section requires the whole amount of premiums on unexpired policies to be reserved from the surplus profits in making dividends, while the proviso permits a dividend of ten per cent, if only one-half of such premiums is reserved.
Legislation on this subject has not been uniform in this State. In 1825, an act was passed prohibiting dividends except from surplus profits arising from the business of the corporations. (Laws of 1825, chap. 325.) Under this general language there was left a wide margin to determine what should be regarded as "surplus profits." The general act of 1849, chapter 308, only prohibited dividends by any insurance company, when its capital was impaired, and no provision was made for any reservation to meet liabilities upon outstanding risks. The original act of 1853, chapter 466, section 12, required a reservation of a sum equal "to the amount of premiums unearned," and beyond that fixed no limit to the amount of dividends. In 1862, chapter 367, the Legislature prohibited dividends to a greater extent than ten per cent, or one-tenth of the capital, unless the company had in addition to its capital and such dividend, a sum "equal to the whole amount received by such company for premiums on policies which should be in force at the time of declaring such dividend." By chapter 563 of the Laws of 1864 any dividend was prohibited except from surplus profits, reserving therefrom the whole amount of premiums on unmatured risks, which were declared to be unearned premiums. This act was substantially the first part of section 12 above quoted, but by chapter 199 of the Laws of 1865, the section was amended by adding the proviso, allowing dividends of ten per cent after reserving one-half of the premiums on existing risks. This proviso qualifies the preceding portion of the statute, and taken in connection, the whole section *Page 71 
signifies, I think, that a ten per cent dividend may be made by reserving one-half of the premiums on unexpired policies if that amount is in hand, and the other requirements are complied with, but if more than ten per cent dividend is declared the whole amount of such premiums must be reserved, and in that case such whole amount is declared to be unearned premiums. This construction gives some effect to every part of the statute, while it detracts somewhat from the sanctity claimed for the premium fund, by the learned counsel for the relator. The statute permits a portion of the fund, in certain contingencies, to be used in estimating the amount of dividends to be declared and paid. But aside from this we are disposed to consider whether the statute is to be applied in making assessments for the purpose of taxation. What should be reserved by these corporations as a security to policy holders, and for the safety of the public in dealing with them, is a question governed by different considerations and principles from those which relate to taxation for the support of the government. It is a wise exercise of power on the part of the Legislature to prevent these corporations from distributing all their surplus property among their stockholders, and throwing upon customers the risk of a depressed business season or unusual losses. The amount of security proper to be reserved is entirely discretionary with the Legislature. The fund should be ample to meet all liabilities under ordinary contingencies. The principle upon which taxation rests, is that it is a contribution or compensation for the expense of protection to life, liberty, and property which the government furnishes. In this State it is imposed upon property, and the theory as well as the equity of the law is that it shall be imposed upon all property in whatever form it may exist, because the government is supposed to protect all property alike, and the contribution should be in proportion to the value of the property. This right of taxation is an indespensable prerogative of every government without which no government could exist, and in exercising it, it is a sacred duty to impose *Page 72 
the burdens equally, and to enforce the maxim alike of law and ethics, that "equality is equity." It is manifest that the statute in question, and the statutes prescribing the mode of assessments, and the property liable thereto, are radically different in principle, and in the objects designed to be accomplished. One of the familiar canons for the interpretation of statutes, is that they are to be construed with reference to the purposes and objects to be attained.
The object of the statute in question was for a particular purpose, to prevent a distribution of any of the assets of the insurance companies which were not surplus beyond any possible contingency as a security to policy holders, and its language must be construed as intended to be applied to this purpose and no other. The Legislature declared that for the purpose of making dividends, premiums on unexpired risks should be reserved from the surplus profits. The particular clause relied upon "which are hereby declared to be unearned premiums" was for the same purpose, that is, that such premiums shall be deemed unearned in making dividends. This general declaration does not have the effect of extending the application of the statute to other purposes. The statute does not intimate that no portion of these premiums shall be deemed property under any circumstances, much less for the purpose of taxation. The subject of taxation was not within the contemplation of the Legislature, nor was it intended to modify any existing rule on that subject. Other property is also reserved in making dividends. The amount due on bonds and mortgages, and other choses in action on which neither principal nor interest has been paid during the last year, and for which foreclosure or suit has not been commenced for collection, also all interest due and unpaid. It is not denied that these items are taxable as property, and yet it might as well be claimed that the effect of the statute was to destroy their property qualities for taxation, as that the declaration that certain money received for premiums should not be deemed surplus profits in making dividends operates to destroy it as property for the purpose of taxation. *Page 73 
True the Legislature has the right to determine what may and what may not be taxed of the property of these corporations, but exemptions are not favored, and cannot be established by doubtful implication. Taxation is the rule, and exemption is the exception, and must be clearly established.
The statutes relating to taxation, which are in no way affected by the twelfth section of the insurance act above quoted, are based upon the principles before referred to, and are reasonably plain. The statute declares that "all lands, and all personal estate within this State whether owned by individuals or by corporations shall be liable to taxation, subject to the exemptions hereinafter specified." None of the exemptions apply to this class of property. In the statute before referred to, monied corporations are to be assessed on a valuation equal to their capital stock and their surplus earnings (less ten per cent).
It was the duty of the respondents to obey these statutes. The premiums received on policies not expired, became the property of the relator as they were received. This amount of property thus received, had the protection of the government to the same extent as other property. In Fire Ins. Co. v. Parker (35 N.J.R., 575), it was held that such premiums were the property of the company, and liable to taxation without any deductions for contingent liability on outstanding policies. But under our statute this court in People v. Ferguson (38 N.Y., 89), held that a proper deduction should be made on account of such liability. The court say that, "there was no practical difficulty in reaching a result by the aid of authentic tables, and by such evidence, as long established insurance companies can readily furnish." This course was adopted in this case. The amount fixed by experience, and recognized by the statute itself is fifty per cent of the amount of such premiums. This was the amount adopted by the respondents, and no complaint is made of its propriety. True, as suggested, an unusual calamity like the Chicago fire, might exhaust the whole fund, and the entire capital, but such disasters are exceptional, and are not to be *Page 74 
anticipated in estimating probable losses, any more than that a building should be exempt from taxation, because it might burn up, or money and personal effects, because they might be stolen. Property must be taken as it is found, and the usual and ordinary state of things must be presumed. One-half of these premiums being regarded as ample to satisfy all liability upon the outstanding policies, the other half is both legally and equitably "earnings." Presumably all the policies might have been reinsured for fifty per cent, and the company relieved from all liability. It would then have possessed the other half, free from any claim upon existing policies. "Surplus" earnings, is an amount owned by the company, over and above the capital and actual liabilities, and if one half of the premiums upon unexpired policies may, as we have seen, be regarded as earnings, the manner of arriving at the surplus by the respondents, was not objectionable. I am of opinion, therefore, that no error was committed by the respondents in estimating one-half of the premium fund, as earnings of the relator, and that the statute above quoted has no application to the subject.
It is also insisted that the mode of making the assessment was irregular. The Revised Statutes (1 R.S., 414) require corporations on or before the first of July in each year to make a statement to the assessors of certain facts showing their financial condition.
In the city of New York the time of making a valuation of real and personal estate for the purpose of taxation is changed from that prescribed for the remainder of the State to the period between the first Monday of September, and the second Monday of January, and the books are to be kept open for inspection from the latter date until the first day of May, during which time the commissioners may reduce the valuation either on their own motion, or upon the application of any taxpayer, but cannot increase it without notice to the taxpayer. (Laws of 1859, chap. 302; Laws of 1867, chap. 410.) Between September and January the commissioners inserted the name of the relator in the roll, and *Page 75 
affixed a valuation of $800,000, of which the relator had notice, and was requested to make the statement required by law. A statement was made on the sixth of February. Afterwards, and about the first of May, the commissioners reduced the valuation of the relator to $54,681, and gave notice thereof to it. It is objected that the commissioners had no power to make any assessment until the relator had made its statement. The delay in making the statement was the fault of the relator. Corporations may be assessed, although no statement is made. (1 R.S., 415, § 6.) The relator was not prejudiced by it. It was designed as provisional merely. The relator was notified to make the statement, and the assessment now complained of, and before us for review, was not made until after the statement had been received, and as we must assume fairly considered.
It is urged that the statement was conclusive upon the commissioners, and that as the officers of the relator stated that there were no surplus earnings, the commissioners had no right to estimate any, and it is also claimed that the commissioners had no right to consider the facts stated in the report of the relator to the superintendent of the insurance department, without notice to the relator, and giving him an opportunity to be heard.
Neither of these objections is tenable. The statute does not expressly or impliedly make the statement required of corporations conclusive, and such a rule would be unjust. They are interested, and there is no more reason why they should be permitted to usurp the province of the commissioners than there is in the case of any other taxpayer. It is the judgment of the assessors that the law requires. (People v. Barker,48 N.Y., 70.) These statements are intended as an aid to the commissioners in forming their judgment. They are a species of evidence required to be furnished, but the commissioners are not thereby absolved from the statutory duty of making "diligent inquiry" to ascertain all the real and personal property of the taxpayers within their jurisdiction. The sworn returns of the relator to the insurance *Page 76 
department were not only competent, but very pertinent evidence for the consideration of the commissioners, and they were not bound to notify the relator, or give it any hearing in respect to it. There is no such requirement of the statute. If notice had been given it is difficult to see any other answer which could have been made, than the one so ably pressed upon us of statutory immunity from taxation on surplus earnings, which we think not tenable. The relator might however have applied for a hearing under section 10 of the act of 1859, and have made any explanation it could under the oath of any of its officers. Instead of this, it simply protested against the action of the commissioners, and obtained a certiorari. We think the statute was complied with in making the assessment, and that the relator has had every opportunity to be heard which the law requires, or which is necessary for the protection of its interests.
A point is made that the market value, and not the par value of United States bonds should have been deducted from the personal estate, and exempted from taxation. By act of Congress of February 25, 1862, it is provided that "all stocks, bonds, or other securities of the United States * * * shall be exempt from taxation by or under State authority," and the act of 1863 contained substantially the same language. This exemption, (the propriety or justice of which I have never been able to appreciate) is complied with by exempting the bonds as issued. The statute designates them as bonds, etc., and does not refer to value beyond what they import on their face. The right of exemption is "limited by the principle that State legislation, which does not impair the usefulness or capability of such instruments to serve that government, is not within the rule of prohibition." (National Bank v. Commonwealth, 9 Wall., 353.) They were issued by the government at par, and for the most of them, payment was received in a greatly depreciated currency, and we cannot suppose that Congress in the enactment of this exemption intended to extend it beyond *Page 77 
the amount for which they were issued. If the construction is doubtful the decision should be against the exemption. It is a universal rule that exemptions are to be strictly construed. (Cooley on Taxation, 146; Hilliard on Taxation, 74; 6 Penn. St., 70; 15 id., 351; 53 id., 219; 2 Ellis Ellis, 548.)
Upon the whole case we think that the relator has no reason to complain of the amount at which its property was valued.
In the case of the Niagara Fire Insurance Company argued at the same time with the foregoing, the relator claims an additional exemption of $200,000, for bonds of the city of New York held by it, and this claim is predicated upon the recent decision of the Supreme Court of the United States in Murray v. Charleston (6 Otto, 432). That decision has no application to this case. It was there held that an ordinance of the city of Charleston which imposed a tax of two per cent upon its own bonds bearing six per cent interest and required it to be reserved from the interest due to a foreign bondholder impaired the obligation of a contract and was void. Here these bonds are taxed the same as other like property. The contract with the city is in no manner interfered with. The city pays its principal and interest according to the terms of its obligations without deduction or abatement. No court has ever yet held that a State may not impose a general tax upon such property in the hands of individuals or corporations. The opinion expressly disclaims any such idea. It says: "A State may undoubtedly tax any of its creditors within its jurisdiction for the debt due to him, and regulate the amount of the tax by the rate of interest the debt bears, if its promise be left unchanged. A tax thus laid impairs no obligation assumed. It leaves the contract untouched." Here the bonds are taxed under a general description of property according to value, under a law applicable to the whole State, and the terms of the contract are not affected.
As to the question of costs on a common law certiorari, there is a lamentable conflict of authority, but it has been settled *Page 78 
in this court as announced in People v. McDonald
(69 N.Y., 369). But we think without considering that question that costs may be allowed in these cases upon the ground that the writ ofcertiorari is authorized by statute to review and correct the decision and action of the commissioners "on the merits" which makes its office somewhat broader and more comprehensive than that of a common law certiorari, and entitles it to be denominated a "special proceeding."
The orders and judgments must be affirmed, with costs.
All concur.
Judgments affirmed.