THE PEOPLE, ex rel. WILLIAM H. LEONARD et al., as Trustees, etc., Appellants, *v.* THE COMMISSIONERS OF TAXES AND ASSESSMENTS IN THE CITY OF NEW YORK, Respondents.

The fact that U. S. bonds are above par in the market does not render the owner liable to assessment and taxation on the excess. The exemption from taxation is not limited to the par value, but applies to the entire value of the bonds, and a taxation of the excess is a taxation of the bond.

Accordingly *held,* that an assessment against relators as trustees, for personal property, where the only property held by them as such consisted of U. S. bonds, which assessment was the amount of the premiums the bonds then bore in the market, was illegal and invalid.

*People, ex rel. M. F. Ins. Co., v. The Commissioners* (76 N. Y. 64), limited.

(Argued June 27, 1882 ; decided October 10, 1882.)

Appeal from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made April 10, 1882, which affirmed an order of Special Term, dismissing a writ of *certiorari* brought to review an alleged illegal assessment against the relators, as trustees under the will of Robert H. Woodward, deceased.

The material facts are stated in the opinion.

*Hamilton Odell* for appellants.    As the entire property held by the relators, and upon which the tax complained of was laid, consisted of bonds of the United States, it was not subject to State taxation.    (1 R. S. 388 [marg.] § 5 [4]; *Weston* v. *City Councils*, 2 Peters, 449; *B'k of Commerce Case*, 2 Black. 620; *B'k Tax Case*, 2 Wall. 200; *The Banks* v. *The Mayor*, 7 id. 16; *Bank* v. *Supervisors*, id. 26; *Nat. B'k* v. *Commonwealth*, 9 id. 359.)    The intention of Congress was to exempt the thing itself, the bond with its interest coupons, without regard to its market value, which would necessarily be unstable and fluctuating.    (*Manhattan Ins. Co.*, 9 Wall. 353; 2 Black. 633; *Bank* v. *Supervisors*, 7 Wall. 26.)

*J. A. Beall* for respondent.    The exemption from taxation of bonds and securities of the United States extends only to the bonds themselves, the amount actually to be paid by them and for which they were issued, and the commissioners were right in refusing to deduct from the personal estate of the relator the premium upon said bonds, in addition to their face or par value.    (*People, ex rel. Manhattan Ins. Co.*, v. *Comm'rs*, 76 N. Y. 64; *Nat. B'k* v. *Comm.*, 9 Wall. 353; *Weston* v. *City of Charleston*, 2 Peters, 449; *Society for Savings* v. *Coite*, 6 Wall. 594; *People* v. *Comm'rs*, 4 id. 244; *Van Allen* v. *Assessors*, 3 id. 573; *People* v. *Comm'rs, etc.*, 94 U. S. 415; *Hepburn* v. *School Directors*, 23 Wall. 480; Cooley on Taxation, 6, 146; Burroughs on Taxation, 74; *Kelsey* v. *Badger*, 7 Watts, 516; *Berks Co.* v. *R. R. Co.*, 6 Penn. St. 70; *Wayne Co.* v. *D. & H. C. Co.*, 15 id. 351; *Meth. Church* v. *Ellis*, 38 Ind. 3; *St. Peter's Church* v.

*Comm'rs,* 12 Minn. 395 ; *Crawford* v. *Burrell,* 53 Penn. St. 219 ; *Hart* v. *Plum,* 14 Cal. 148 ; *Regina* v. *Aylesford,* 2 E. & E. 548 ; 8 Watts & Serg. 344 ; *Roosevelt Hospital* v. *Mayor, etc.,* 84 N. Y. 108 ; *Berks Co.* v. *R. R.,* 6 Penn. St. 70 ; *Trustees Meth. Ep. Ch.* v. *Ellis,* 38 Ind. 3.)

Earl, J.    The relators were trustees under the will of Robert T. Woodward, and as such, had in their possession bonds of the United States of the par value of $600,000, which bonds were issued under the act of Congress (Chap. 256) of July 14, 1870. That act provided that all the bonds issued thereunder, and the interest on them should be exempt from Federal, State, municipal and local taxation.

In 1881 the respondents assessed the relators as such trustees for personal property $600,000. They appeared before the respondents, and upon proof that all the personal property which they possessed consisted of the government bonds, claimed that they were not liable to assessment and taxation. The respondents thereupon reduced the assessment to $72,000, which was the excess of the actual value over the par value of the bonds, thus holding that the relators were not taxable for the par value of the bonds, but that they were taxable for the premiums the bonds then bore in the market.

Thereafter the relators obtained a writ of *certiorari,* which is authorized by chapter 269 of the Laws of 1880, to review the assessment so made, and the court below, both at the Special Term and upon appeal at the General Term, held that the assessment for the premiums upon the bonds was authorized and valid ; and whether it was or not is the sole question for our determination.

It is undisputed that an individual cannot be taxed under State authority on account of bonds issued by the United States. He is exempt from taxation upon such bonds in whatever form the taxation may take, whether upon the bonds *eo nomine,* or upon personal property generally in which the bonds are included, or upon a value equal to the amount of the bonds ; and so it has been decided in the Federal courts. (*B'k*

*of Commerce v. New York City,* 2 Black. 620 ; *Bank Tax Case,* 2 Wall. 200 ; *The Banks* v. *The Mayor,* 7 id. 16, 23.)

The principle at the foundation of these cases is that announced by Chief Justice MARSHALL in *Weston* v. *The City Council of Charleston* (2 Peters, 449), that "the right to tax the contract to any extent, when made, must operate upon the power to borrow before it is exercised, and have a sensible influence on the contract. The extent of this influence depends on the will of a distinct government. To any extent, however inconsiderable, it is a burden on the operations of government. It may be carried to an extent which shall arrest them entirely."

There is nothing in the statutes which confines the exemption from taxation to the par value of the bonds, and there is nothing in the reason upon which such exemption is based which should so confine it. The fact that government bonds are above par is a mere accident. They may in the market be worth more or less than par, and they may fluctuate from week to week and month to month, depending upon the conditions of trade, commerce, finances and other matters. The fact that they are above par may be due to the plethora and cheapness of money, and not to any actual increase in value as compared with any fixed standard.

When, therefore, a government loan is put upon the market, it is plain to be seen that it might be materially affected if it were known that, whenever the bonds to be issued should, in the market, from any cause, happen to be at a premium when the assessors came to make their assessment, such premium could be assessed and taxed. Such a tax would affect the value of the bonds and embarrass the government in effecting a loan in the same way, if not in the same degree, that a tax upon the bonds *eo nomine* would.

Government bonds are frequently taken for permanent investment, as these probably were, and in such cases the premium is of no importance or advantage. If every holder should at once sell his bonds when at a premium there would be no premium. It is the fact that they are wanted and held for permanent investment that gives them a value above par

and produces the premium. It is the policy of the law that one who invests in government bonds shall receive the principal and interest of the bonds free from any diminution from taxation, and in that way only can effect be given to the principle upon which the exemption rests. When an individual holds his bonds to maturity he gets no advantage from any premium they may have borne at any time; he receives simply the principal and interest due upon the bonds, and from these would have to be deducted the taxes he may have been obliged to pay upon the premiums which might, if authorized, consume a large share if not all the interest.

It is clear, therefore, that if the premiums upon such bonds, over which the holder has no control, which he can neither create nor destroy, and which do not really indicate any enhanced value of the bonds, can be taxed, the policy of the law as to the exemption of government securities from taxation would be greatly violated. The premium is not something distinct from the bond and cannot exist apart from the bond. It is inherent in it and goes with it. When the confidence of the public in it is destroyed, that is destroyed. When the bond is transferred, that goes along, and as the bond approaches maturity it vanishes. The premium is part of the entire value of the bond, and when that is taxed the bond is taxed, or what is equally condemned, the value or a part of the value of the bond is taxed. A conception of the premium upon a bond as a distinct entity for the purpose of taxation is too transcendental and metaphysical for common comprehension and judicial cognizance.

It is said, however, that we have decided, in the case of *The People, ex rel. M. F. Ins. Co.,* v. *Commissioners* (76 N. Y. 64), that such premiums may be included in the personal property of an individual for the purpose of taxation. In that case many important questions were involved and discussed. The one as to the taxation upon the premiums which government bonds bore was of minor importance in that case, and did not, therefore, receive that consideration which it would have received if it had been the only or the main question involved.

We will not stop now to inquire whether this case can be distinguished from that; but we are constrained now to hold, upon fuller consideration of the question, the views above expressed which lead to a reversal of the judgments of the General and Special Terms and the vacation of the assessment complained of, without costs against the respondents.

All concur.

Judgment accordingly.