574 PEOPLE, ex rel. WEST. F. I. CO., v. DAVENPORT et al. [March,

Statement of case.

the contract of suretyship that due diligence shall be used in proceeding against the principal.

The judgment should be reversed and new trial ordered, costs to abide event.

All concur.

Judgment reversed.

THE PEOPLE, ex rel. THE WESTCHESTER FIRE INSURANCE COMPANY, Appellant, v. GIDEON W. DAVENPORT et al., Trustees, etc., Respondents.

A party assailing an assessment as excessive must make it appear conclusively that the method by which the assessors arrived at the result complained of was incorrect, and that the assessment does not represent the fair value of the property assessed.

The affidavit of a person taxed, as to the amount and value of taxable property possessed by him, presented to the assessors as the basis of a claim to be relieved from taxation, is not conclusive upon the assessors.

The act of 1880 (Chap. 110, Laws of 1880) regulating the examinations and reports of fire insurance companies does not affect the status, as taxable property, of premiums upon unexpired policies held by such a company.

The liability of the company to refund a part of such premiums to the assured upon surrender of the policies does not constitute a debt owing by it, and in assessing the value of its taxable property it cannot claim a deduction of the whole amount of unearned premiums (EARL, J., dissenting).

The relator was assessed $76,000 upon personal property; it appeared before the assessors and asked to have the same stricken from the assessment. In the affidavit upon which the application was based it was conceded that the company had $239,600 of personal property subject to taxation unless exempt by reason of its contingent liability for unearned premiums, this was stated to be about $340,000. No statement was made as to the amount of the outstanding policies, the cost of reinsuring the risks, or the method by which the amount of liability stated was reached. The assessors refused to strike out the assessment. Their return to a writ of *certiorari* did not state the evidence upon which they proceeded, but alleged that the assessment "was duly and legally made." *Held* (EARL, J., dissenting), there was no evidence showing that the assessors did not deduct from the conceded assets all the relator was entitled to have deducted on account of said contingent liabilities, and in the absence of such evidence it was to be assumed that they proceeded legally.

1883.] People, ex rel. West. F.I. Co., *v.* Davenport et al. 575

Statement of case.

The provision of the act "to provide for raising taxes for the use of the State upon certain corporations, joint-stock companies and associations" (§ 8, chap. 542, Laws of 1880), exempting from assessment and taxation, save as provided for in the act, the capital stock and personal property of the corporations, companies and associations specified, applies only to State taxation; it does not affect the right of municipal authorities to assess and tax such property for local purposes.

In construing a statute its title is a legitimate subject of consideration in determining the legislative intent.

When the language of a statute, if applied in its literal sense, will lead to an absurdity or manifest injustice, it is the duty of the court to limit and restrict its operation.

Exemption from taxation is not favored by the courts, and unless the language of a statute is so clear and unambiguous that the intention of the legislature to create the exemption indisputably appears, such a construction will not be given to it.

The authorities upon this subject collated.

While, when in an amendatory statute there appears a radical change in the phraseology, it is generally to be regarded as a legislative construction that the law so amended did not, as originally framed, embrace the amended provisions; the time and the circumstances under which the amendment was enacted are to be regarded in considering its effect. If the amendment follows soon after the original act and after controversies have arisen as to its construction because of the use of doubtful phraseology therein, the amendatory act may be construed as in effect declaratory of the object and intent of the prior legislation.

Accordingly *held*, that the act of 1881 (Chap. 361, Laws of 1881), amending said provision of the act of 1880, by expressly restricting the exemption to taxes for State purposes, and the act (§ 3, chap. 542, Laws of 1880), legalizing and confirming the assessment and levy of taxes in the city of New York upon the corporations, etc., named, were to be considered as simply declaratory of the intent of the original act.

A declaratory act, although it has no conclusive force in the construction of the prior statute, yet is entitled to consideration and weight.

(Argued January 30, 1883; decided March 13, 1883.)

Appeal from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made December 13, 1881, which affirmed an assessment made by the defendants, as the board of trustees of the village of New Rochelle, against the relator, upon personal property, and quashed the writ of *certiorari* by which said assessment was brought up for review.

The material facts are stated in the opinion.

576 People, ex rel. West. F. I. Co., v. Davenport et al. [March,

*Samuel Hand, John H. Strahan and Martin J. Keogh* for appellant. Upon the only evidence presented to the assessors, the relator was not assessable for any personal property, and it was their duty to reduce or strike out the whole assessment. (Laws of 1864, chap. 249, title 4, § 2 ; 1 R. S. 391, § 9, subd. 4.) The "actual value" of the assets of the relator (after deducting the exempt United States bonds) could only be estimated for the purpose of taxation, after deducting the unearned premiums. (2 Session Laws, 1857, p. 1 ; *People, ex rel. Ins. Co.*, v. *Ferguson*, 38 N. Y. 91 ; *People* v. *Commrs.*, 76 id. 68, 73 ; *Oswego Co.* v. *Dalloway*, 21 id. 458; *State* v. *People's Ins. Co.*, 35 N. J. L. 575; *People, ex rel. Glens Falls Ins. Co.*, v. *Ferguson*, 38 N. Y. 91.) Under the act of 1880, the relator was not liable to assessment on its personal property by the defendants, but the taxation there provided exempted it from taxation by localities. (Laws of 1880, chap. 542, §§ 3, 5, 8.) While it may be admitted that orders of the General Term, merely quashing the writ of *certiorari* without deciding the merits, are not appealable, yet where the order affirms the assessment, as in this case, an appeal will always lie. (*People* v. *Tax Commrs.*, 85 N. Y. 655 ; *S. C.*, 73 id. 607 ; *People* v. *Commrs.*, 76 id. 68, 72.)

*George W. Parsons* for N. Y. Board of Fire Underwriters, appellant. The facts shown by the respondents' return to the writ of *certiorari* in this case did not justify the imposition of the tax complained of. (38 N. Y. 91 ; *People* v. *Dolan*, 36 id. 62 ; 2 Laws of 1857, p. 1 ; 1 R. S. 415, original paging, part 1, chap. 13, title 4, §§ 1, 6 ; Laws of 1853, chap. 654, p. 1240, § 1 ; Laws of 1857, chap. 456, p. 1, § 3 ; Laws of 1863, chap. 240, p. 435, § 1.) Premiums unearned, reclaimable by policy-holders on demand for unexpired terms of their policies, are not liable to taxation. (76 N. Y. 64, 74 ; *People* v. *Ferguson*, 38 id. 89 ; *Matter of Croton Ins. Co.*, 3 Barb. Ch. 643 ; 2 R. S. 470, § 75 ; *Leroy* v. *Globe Ins. Co.*, 2 Edw. Ch. 673.) It is competent for the legislature to declare, as to corporations, what portion of their funds shall constitute "surplus

1883.] PEOPLE, ex rel. WEST. F. I. Co., v. DAVENPORT et al.   577

Statement of case.

profits" or "earnings," as distinguished from "capital."
(*Mut. Ins. Co.* v. *Supv'rs*, 4 N. Y. 442; *Sun Mut. Ins. Co.*
v. *Mayor, etc.*, 8 id. 241; *People, etc.*, v. *Supv'rs*, 16 id. 424.) It
is *res judicata* that these contingent liabilities of insurance com-
panies must be taken into account by the assessing officers, and
made the basis of proper reduction.   (*Oswego Starch Co.* v.
*Dillowry*, 21 N. Y. 458; *People* v. *Reddy*, 43 Barb. 439;
*People, ex rel., etc.* v. *Comm'rs, etc.*, 76 N. Y. 73; *People* v. *Fer-
guson*, 38 id. 89.) The relator was right in seeking relief by *cer-
tiorari*, and this court has full power to review the action of
the assessors, and to grant the relief sought. (Laws of 1856,
chap. 302, § 20; *People* v. *Ferguson*, 38 N. Y. 89; *Western
R. R. Co.* v. *Nolan*, 48 id. 513; *Genesee Valley N. B'k* v.
*Supv'rs*, 53 Barb. 223; *People* v. *Allen*, 52 N. Y. 538; *Peo-
ple* v. *Kelly*, 35 Barb. 444; *People* v. *Supv'rs*, 51 N. Y. 442;
*People* v. *Comm'rs*, 73 id. 607; *S. C.*, 85 id. 655; *People* v.
*Comm'rs*, 76 id. 73.)

*B. D. Silliman, Julien T. Davies, Edward Lyman Short*
for corporations similarly situated with appellant. Had the
intention been a partial exemption only, it would have been so ex-
pressed. (*State* v. *Mayor*, 32 La. Ann. 713; *Bentley* v. *Rotter-
ham*, L. R., 4 Ch. D. 592; *Pillows* v. *Robert*, 13 How. [U. S.]
476; *Camber* v. *Hardcastle*, 3 B. &. P. 117.) There is no ambigu-
ity in section 8, and hence the language must be taken in its nat-
ural and obvious meaning. (*Park Bank* v. *Wood*, 24 N. Y.
98; *Hoyt* v. *Commissioners*, 23 id. 224; *Waller* v. *Harris*,
20 Wend. 562; *McCluskey* v. *Cromwell*, 11 N. Y. 601; *Peo-
ple* v. *R. R. Co.*, 13 id. 78; *U. S.* v. *Fisher*, 2 Cranch, 399;
*Warburton* v. *Loveland*, 2 D. & C. 489; *Chewhee Tobacco*, 11
Wall. 620; *Mead* v. *U. S.*, 9 id. 720.) In the construction of sim-
ilar statutes total exemption has been conceded. (*Ill. Cent. R.
R. Co.* v. *McLean*, 17 Ill. 291; *State B'k* v. *People*, 5 id. 303;
*B'k Cape Fear* v. *Edwards*, 5 Ired. 576; *State* v. *Berry*, 17
N. J. 80.) In the construction of similar statutes the unam-
biguous character of the language has been held controlling.
(*Newstandt* v. *R. R. Co.*, 31 Ill. 484; *Bd. of Supervisors* v.

*Campbell*, 42 id. 490; *Farmers' B'k* v. *Comm.*, 6 Bush, 127; *E. & P. R. R. Co.* v. *Trustees*, 12 id. 236; *Johnson* v. *Commonwealth*, 7 Dana, 342.) The rule that exemptions are to be construed strictly has no application, the statute presenting the case of a substitution of a new tax for an old one, and not an exemption from taxation. (*M. & St. P. Ry. Co.* v. *Bd. Supervisors*, 29 Wis. 116; Holland's Elements, 289; Vattel, B. 2, chap. 17, § 305; Story, 411; Hardcastle, 8; 2 Phil. Int. Law, 106; *State Lottery Co.* v. *City of New Orleans*, 24 La. Ann. 86; *C. & A. R. R. Co.* v. *Hillegar*, 18 N. J. 11, 71; *Gardner* v. *State*, 21 id. 557; *State* v. *Winton*, 23 id. 529; *N. Y. & E. R. R. Co.* v. *Sabin*, 26 Penn. St. 242.) The court cannot determine what would be the wisest policy and construe the statute accordingly. (17 Ill. 991.) The statute gives a commutation for all other taxes. (*State B'k* v. *People*, 5 Ill. 304; *Hunsaker* v. *Wright*, 30 id. 146; *Daughdrill* v. *Ala. Co.*, 31 Ala. 91, 99.) The Virginia cases cited in opposition must be read in connection with *City of Richmond* v. *D. R. R. Co.* (21 Gr. 694). Laws of 1881, chapter 361, section 8, does not contain a legislative construction of section 8, or reveal any intention that the exemption was partial. (*People* v. *Bd. Supervisors*, 16 N. Y. 431; *People* v. *Wilson*, 3 Hun, 441; *Ropes* v. *Clinch*, 8 Black, 303.) If restrictive interpretation be given, then under existing statutes, the capital stock and personal property must be taxed for all purposes, State as well as local, in New York city. But the tax would be void *in toto*, because void as to State purposes. (*Johnson* v. *Colburn*, 36 Vt. 695; *Clarke* v. *Strickland*, 2 Curtis, 443; *Bangs* v. *Snow*, 1 Mass. 181; *Nelson* v. *Kempton*, 13 id. 282; *Freeland* v. *Hastings*, 92 id. 370; *Drew* v. *Davis*, 10 Vt. 508; *Huse* v. *Merriam*, 2 Me. 345; *Hubbard* v. *Brainard*, 35 Conn. 563; *Campbell* v. *State*, 41 Ill. 455; *Malvern* v. *Redshaw*, 1 Mod. 35.)

*Odle Close and George P. Andrews* for respondents. The respondents were not bound to adopt the statement of the relator, but after obtaining all information within their reach,

it was their duty to assess the relator in such sum as they determined to be just, and such determination on their part is final. (*People, ex rel. M. F. Ins. Co.,* v. *Commrs.,* 76 N. Y. 64, 69, 70, 71, 72.) The relator was not entitled to exemption, under chapter 542 of the Laws of 1880, from assessment and taxation for local purposes. (3 N. Y. Monthly Law Bulletin, No. 1; *C. & A. R. R. Co.* v. *City Council of Alexandria,* 17 Gratt. 176; *Humphreys* v. *City of Norfolk,* 25 id. 97; *West. U. Tel. Co.* v. *City of Richmond,* 26 id. 1; *Buffalo City Cemetery* v. *Buffalo,* 46 id. 506; Cooley on Taxation, 146–151.)

Ruger, Ch. J. This appeal presents two questions, viz.:

*First,* whether the relator had in the month of January, 1881, personal property liable to assessment and taxation.

*Second,* whether section 8 of chapter 542 of the Laws of 1880 exempted it from assessment upon its personal property for purposes of local as distinguished from State taxation.

The record shows that the board of trustees of the village of New Rochelle, Westchester county, assessed the relator in January, 1881, upon a valuation of $76,000, for personal property, for the purposes of raising a fund to pay for the expenses of lighting and keeping in repair the street lamps, repairing roads and bridges, and for the contingent expenses of the village.

The relator objected to any assessment upon personal property and presented to the board of village trustees, who were duly authorized to make such assessment, an affidavit made by their secretary about the 8th day of January, 1881, as a basis for such objection. There also appears in the record a subsequent affidavit made by said secretary as the foundation of these proceedings to review such assessment. From both of these affidavits it appears that the relators were the owners of personal property at the time of the assessment in question, to the amount of $774,600; that of this amount $500,000 consisted of an investment in the bonds of the United States government not subject to taxation. That their liabilities for unpaid losses amounted to about $35,000 — leaving $239,600 of

personal property subject to taxation, unless they were exempt therefrom by reason of a contingent liability stated in the affidavits as follows, viz.: "Premiums unearned reclaimable by policy-holders on demand for unexpired terms of their policies (about) $340,000."

If this exemption is allowed to the extent claimed it follows that the relators have no personal property subject to taxation. The return of the trustees to the writ of *certiorari* herein does not state the evidence upon which they proceeded in making the assessment against the relator, but does allege that the said assessment was "duly and legally made." As the law stood prior to the passage of the act of 1880, the surplus earnings and capital stock of an insurance company were liable to assessment at their actual value less certain deductions provided for by statute, and such value was to be determined by the assessors upon such evidence as was accessible to them. (Chap. 456, Laws of 1857; *People, ex rel. Glens Falls Ins. Co.*, v. *Ferguson*, 38 N. Y. 91.) The affidavit of the person taxed as to the amount and value of taxable property possessed by him may be presented to the assessors and made the basis of a claim to be relieved from assessment, but such affidavit is not conclusive upon the assessors, and they are authorized to inquire further and estimate the actual value of such taxable property upon such evidence as they may possess. (*The People, ex rel. M. F. Ins. Co.*, v. *Commissioners*, 76 N. Y. 73.) We have no evidence before us which shows that the assessors did not deduct from the conceded assets of the relator all that it was entitled to have deducted on account of its contingent liabilities.

We have shown that at least $163,600 was thus deducted by the trustees, and there is no evidence in the case upon which a legal conclusion can be predicated that this deduction was not all that the relator was entitled to ask.

The affidavit of the secretary of the company does not state the amount of outstanding policies carried by the company, the cost of reinsuring their risks, or the method by which he computes the amount that holders are entitled to reclaim upon

a surrender of the unexpired policies. The affiant, assuming the power of judgment upon the various questions involved in arriving at such a result, swears that a certain amount is liable to be reclaimed by policy-holders. This is a mere legal conclusion, which has been predicated upon facts not disclosed.

It is essential that a party assailing the validity of an assessment should make it conclusively appear that the method by which the assessors arrived at the result complained of was incorrect, and that the assessment does not represent the fair value of the property assessed. This does not appear in this case unless we assume that the method adopted by the secretary in computing the amount which policy-holders were entitled to reclaim from the company was correct, and also that the value of the property of an insurance company is impaired to the full amount which it is thus liable to refund.

We can find no authority either in the statute or the reported decisions of the courts to sustain such a conclusion. It was held by this court in the case of *The People, ex rel. The M. F. Ins. Co.*, v. *The Commissioners of Taxes* (*supra*), that none of the provisions of the various statutes included in chapter 466, Laws of 1853, chapter 563, Laws of 1854, and chapter 199, Laws of 1865, affected the status as taxable property of premiums upon unexpired policies held by a fire insurance company. Chapter 110 of the Laws of 1880 falls within the reason of the same case and does not, therefore, affect the taxable status of such property. We are not aware of any statute which, either directly or by implication, establishes a rate for taxing any of the property belonging to a fire insurance company at less than its fair value, and what that value may be is to be determined by the assessors, by the same rules that govern them in arriving at the value of the property of an individual. It was held by this court in the case of *The People, ex rel. Glens Falls Ins. Co.*, v. *Ferguson* (38 N. Y. 89) that when the assessors absolutely refused to deduct any sum from the assessment for personal property of an insurance company on account of its contingent liability to refund unearned premiums, that they erred, and that such liability should be taken into account in arriving at the actual value of its assessable property.

This court, in the case of *The M. F. Ins. Co.* v. *Commissioners* (*supra*), decided that an insurance company had no cause to complain that an assessment was excessive when the assessors had appraised its receipts for premiums upon unexpired policies at fifty per centum of such receipts. The court, in that case, intimated quite strongly that a claim to have the entire amount of cash receipts deducted could not be supported under our statute, and quoted approvingly the case of *The People's Fire Ins. Co.* v. *Parker* (35 N. J. L. 575), where it was held that such premiums were the property of the company and liable to taxation, without deduction for contingent liability on outstanding policies. To say that such receipts constitute a trust fund held by an insurance company for the use of the policy-holders, or that it is a liability of the company in any such sense as to constitute a debt entitled to be deducted from the sum of its property in determining the value thereof for assessable purposes, is contrary to reason, and is not sustained by any authority known to us.

The insurer in fact not only acquired the absolute ownership to such moneys when received for premiums, but is, by the lapse of time, soon freed from liability to repay any part thereof to the policy-holders, except in those occasional instances where a loss occurs.

The receipts of a mutual life insurance company authorized to be accumulated and kept as a fund for the payment of losses during its existence, but subject eventually to be divided among its policy-holders, were held to be capital subject to taxation. (*The People, ex rel. Mut. L. Ins. Co.,* v. *Supervisors,* 16 N. Y. 425.) The liability of an insurance company to refund any part of the premiums received by it is remote and contingent and does not constitute one of the objects contemplated by either party in entering into a contract of insurance. The immediate object contemplated by the insured is to obtain an indemnity for any prospective loss which he may be subjected to on account of the peril insured against.

The object of the insurer is to obtain such a sum as will afford him a profit over and above an indemnity on account of

the contingent liabilities which he may incur in the aggregate on account of the various contracts entered into by him.

The right of the assured to surrender his policy and claim a return of the balance of the premium paid by him, less the short rates charged for the time the policy has actually run, is a mere incidental right not contemplated by the parties when the contract was made and is practically seldom resorted to by the policy-holder, for the reason that it is inconsistent with the object and intent of his original contract.

Neither in law or equity does this liability constitute a debt owing by an insurance company which should be deducted from the value of its taxable property, when it is called upon to bear its proportion of the burdens of government.

The conclusion to which we have arrived on this branch of the case is the more gratifying for the reason that otherwise a vast amount of property held by insurance companies in the shape of so-called unearned premiums would altogether escape taxation. Such a result would produce manifest injustice. It would be improper for us to point out the manner by and the amount for which this fund should be subjected to taxation, for the reason that we have not the data and facts before us upon which to base a conclusion, and that question must be left undetermined until a proper occasion arises for its consideration.

There would seem to be some plausibility in a claim that the amount of its assessable property should be reduced by the price which it might cost to obtain a reinsurance of its outstanding risks, were it not for the fact that thereby the charges made against such receipts would be swelled by the increased cost of short rates and the expenses and anticipated profits of two companies instead of one. But in this case we have no way of arriving at the amount which would be required to effect a reinsurance upon the outstanding risks of the relator, and we have no way of determining whether more or less than fifty per centum of the receipts for premiums upon unexpired policies was deducted, either in the computation made by the secretary of the relator, or in the estimates of the

trustees. Until the contrary be shown, we must assume that the trustees proceeded legally in the performance of their official duty.

We are, therefore, brought to the consideration of the second question raised by this appeal, viz.: as to the effect of the provisions of chapter 542, Laws of 1880, upon the power of local authorities to assess the companies therein named upon their personal property, for the purpose of taxation. This act, among other things, provides for the payment by such companies of a tax to be estimated in the manner therein particularly pointed out. Then follows the particular clause, under which it is claimed that such corporations are exempted from the payment of all taxes, except those therein specified, and which reads : " The lands and real estate of the various corporations, joint-stock companies and associations mentioned in this act shall continue to be assessed and taxed where situated, but the capital stock and personal property of said corporations, joint-stock companies and associations shall, hereafter, be exempt from assessment or taxation, except as in this act prescribed, and no tax on gross receipts, except as in this statute authorized, shall be imposed or charged against any street horse-railroad company." It cannot be disputed but that the language employed in the exemption clause of this section, if considered literally, is broad enough to sustain the claim of the relator, but it is claimed on the other hand that it must be construed in connection with the other portions of the same section and act, in view of the existing circumstances and facts to which it relates, as well as of other statutes in *pari materia*, and that if, from these sources, an intent, on the part of the legislature, to restrict the operations of the general words of the statute can legitimately be inferred, it is the duty of the court to give effect to such intent. Some question is raised as to the extent to which the court can inquire into the intent of the legislature with the view of restricting the effect of general language, which, in itself, is plain and unambiguous, but the right of doing so, to some extent, is conceded by the most conservative. (*Smith* v. *People*, 47 N. Y. 330; *The People, ex*

1883.] People, ex rel. West. F. I. Co., *v.* Davenport et al. 585

Opinion of the Court, per Ruger, Ch. J.

*rel. Wood,* v. *Draper,* 15 id. 532; *White* v. *Wager,* 32 Barb. 250; affirmed, 25 N. Y. 328; *Rogers* v. *Bradshaw,* 20 Johns. 735.)

This is a power which should be carefully exercised, and assumed only when the meaning and intent of the legislature can be clearly ascertained and a contrary interpretation would be productive of injustice or great public injury. (*People* v. *Lambier,* 5 Denio, 9.)

It was formerly held that the title of an act was no part of the act itself, and was of little legislative import, but by the Constitution of this State it is made, in some cases, of controlling importance, and it is here held to be a legitimate subject for consideration in determining the intent of special legislative action. (*People* v. *Molyneux,* 40 N. Y. 113; *Bishop* v. *Barton,* 2 Hun, 436; affirmed, 64 N. Y. 637.) But a principle of construction of universal authority is that which requires the court to limit and restrict the operation of a statute when its language, if applied in its literal sense, would lead to an absurdity, or manifest injustice. (Rules of interpretation by various authors; Potter's Dwarris on Statutes, pages 121 to 146.)

Johnson, J., who favored a strict construction of the Constitution in *Newell* v. *The People* (7 N. Y. 97) says: "If the words embody a definite meaning, which involves *no absurdity and no contradiction between different parts of the same writing,* then that meaning, apparent upon the face of the instrument, is the one which alone we are at liberty to say was intended to be conveyed."

It necessarily follows that when a statute does lead to an absurdity or to contradiction between its different parts its general language may be interpreted to conform to the presumed intention of its framer. These principles of construction are more frequently called into exercise in construing acts of the legislature creating exemptions from taxation than any other, for the reason that exemptions to individuals from the common burdens laid upon citizens by the necessities of government are not favored by the courts, and are generally strictly con-

strued. The courts have, therefore, required an exemption from taxation to be described in clear and unambiguous language, and to appear to be, undisputably, within the intention of the legislature, or they have declined to enforce it. "The taxing power is of vital importance," said Chief Justice MARSHALL in *Providence B'k* v. *Billings* (4 Pet. 561); "its abandonment ought not to be presumed in a case in which the deliberate purpose of the State to abandon it does not appear." Illustrations of these rules are quite common in the books, and the following cases are among them: When an act exempted churches or places of public worship from " being taxed by any law of the State," it was held that they were liable to an assessment for improving a street. (*In the Matter of the Mayor, etc., of New York*, 11 Johns. 77.) An act exempted cemetery associations from " all public taxes and assessments." *Held*, that they were liable to tax for building a sidewalk. (*Buffalo City Cemetery* v. *City of Buffalo*, 46 N. Y. 506.) An exemption " of every school-house, and every building erected for " a " seminary of learning," was held not to exempt a private boarding school. (*Chegaray* v. *The Mayor, etc., of New York*, 13 N. Y. 220.) Exemption from " taxation of every kind " does not exempt from an assessment for street improvements. (*Sheehan* v. *Good Samaritan Hospital*, 50 Mo. 155 ; 11 Am. Rep. 412.) A railroad company paid the State a specific tax under a law which provided that it should not " be assessed with any tax on its lands, buildings or equipments." *Held* not to preclude municipal taxation. (*Orange and Alexandria R. R. Co.* v. *Alexandria*, 17 Gratt. 176.) A statute laid a tax on railroads and declared it to be " in lieu of all other taxes." *Held* not to exempt them from taxation for laying out a highway. (*Bridgeport* v. *N. Y. & N. H. R. R. Co.*, 36 Conn. 255 ; 4 Am. Rep. 63.) The Foster Home Society, by its charter, was exempt from " taxes and assessments." *Held*, that this did not include local assessments for municipal purposes. (*State Protestant Foster Home Society* v. *The Mayor, etc.*, 35 N. J. Law, 157.)

Where an act exempted a society from " all taxes, charges and impositions," it was held not to include a tax for improv-

ing streets. (*The City of Paterson* v. *The Society of E. U. M.*, 4 Zabr. 385.)   A statute providing that houses for schools, etc., should be exempt from taxation, *held* not to relieve them from taxation for streets. (*In the Matter of College Street*, 8 R. I. 476.)   Where a cemetery company was exempted from the payment "of any tax or public imposition whatever," it was held that a paving tax was not embraced in the exemption. (*Mayor of Baltimore* v. *Green Mount Cemetery*, 7 Md. 517.)

Some of these cases were decided upon the ground that assessments for the opening of a street and similar purposes were not taxes but were for benefits; however, they seem to illustrate the general principle that the courts are not, in all cases, bound to give effect to the broad and unrestricted language of a statute.

In the light of these principles let us approach the examination of the act in question.

From a general comparison of its provisions with the tax laws in force at the time of its enactment, and the statistics relating to taxation, we find that in any event it provides for a large reduction in the rate of taxation collectible from some, if not all, of the companies described therein. If it be held to exempt them from liability to pay State taxes alone, the reduction from the existing rates would, in many instances, be considerable; but if it should also be held that the act of 1880 exempted them from the payment of all taxes except the tax therein imposed, their contributions to the support of government would be still more largely reduced, a consequence which would seem to show that either they had been overburdened heretofore, or that the legislature did not contemplate so large a deduction from their taxation as the contention of the appellants would now seem to authorize. The corporations named in this act are universally organized and owned by individuals, for their individual profit and advantage, and there is nothing in the character of their business or the objects of their organization which especially entitles them to exemption from the burdens which are common to all other enterprises and citizens,

and it is our duty to scan closely any law under which they claim special immunities or privileges. A logical deduction from the claim of the relator would not only deprive the local legislature of cities and counties of the power of distributing local burdens so that the property of the corporations benefited should bear its equal share, but would operate as a repeal, by implication, of all existing laws authorizing the imposition upon them of taxes for local purposes. No claim is made that there is any attempt to accomplish this repeal, by direct language, but it is urged that an intention to do so must be inferred from the repugnancy claimed to exist between the language of the act and the power of taxation conferred by prior statutes. It is an established principle that the repeal of a statute by implication is not favored, and it is only when the two statutes cannot be so construed as to stand together and to give to each some legitimate effect and operation that a repeal is held to be intended. A consideration of the number and object of the statutes authorizing local taxation throughout the State presents this argument of the relator in a startling aspect. Those objects include the raising of funds for the support of local government, educational purposes and the poor, the establishment and maintenance of police and fire department, the opening, paving, repaving and improving of streets, highways and sidewalks, the lighting of the same, the enforcement of sanitary regulations, the acquisition of cemeteries, free libraries and lands for monument purposes, and the payment of municipal bonded indebtedness. These comprise but a few of the objects for which such taxes may be imposed.

Most of these objects inure directly to the benefit of these corporations, and some of them are indispensable to their safety and protection. In addition to the general laws imposing the duty of protecting all citizens and property-owners upon the local authorities in our State, such corporations, like other citizens, are specially entitled by statute to recover damages from the cities and counties wherein the loss occurs for such injuries to their property as may be occasioned by mobs, riots and unlawful assemblies. It is within the knowledge of

all that, under these statutes, municipal corporations have been held responsible, in heavy damages, for losses of such a character incurred by corporations, and quite recently, in our own State, counties and cities were sought to be charged with the duty of preserving corporate property which had been seized by mobs to the amount of many millions of dollars. Many of the corporations claiming the benefit of this exemption are purely local in their organization and business, and claim their entire support from the communities where they are located.

Taxation and protection are correlative obligations, and it is contrary to justice and fundamental principles to impose the one and withdraw the other. It is undoubtedly competent for the legislature in the exercise of its legitimate power to do an act which is so unequal and unjust as this, but it is also in accordance with established principles that it should be required to manifest such intention in plain and explicit language concerning which there can be no misunderstanding.

Taxation for local purposes is usually based upon the annual assessment-rolls of the towns or cities, and if it is made unlawful to include the property of these corporations in such rolls, their exemption from local taxation becomes absolute.

If we turn from the consideration of the policy of the act and its necessary consequences to the language used therein, we shall find strong reason to infer that the legislature intended to exempt the corporations named therein from State taxation alone.

The sentence by which the lands, buildings and real estate of said corporations are reserved for taxation in the locality where situated, affords some evidence of an intention to exclude their other property from local taxation, but the strength of the argument is much impaired by the apparent confusion which runs through the whole section.

Thus, after apparently exempting all of the corporations named from all assessments or taxation upon personal property, they proceed to enact that street horse railroad companies shall not be taxed upon gross receipts.

Aside from the fact that street horse railroads are not liable

for taxes upon their gross receipts by any law, they had just exempted them and all other corporations (if the relator's claim be correct) from all taxes and assessments whatsoever.

It would seem, by the addition of such last clause, that the framer of the statute supposed, notwithstanding the broad and general exemption, that in some way these corporations had still been left subject to some tax upon their personal property.

The act is too loosely and inconsistently expressed to induce us to give it the sweeping effect which is claimed for it. A further examination of the language of the act shows that it was intended to relate to State purposes and enlist State action alone. Section 3 and others provide that certain corporations "shall be subject to and pay a tax into the treasury of the State annually." Section 9 devotes the moneys received thereunder exclusively to the payment of the current expenses of the State. The manner in which the tax upon capital and surplus earnings is to be arrived at is provided by section 1, as follows : "The president or treasurer of the corporations, etc., named shall report to the comptroller the amount of their capital stock and the amount of each and every dividend declared in the year preceding such report. In case they have declared no dividend, or if such dividends amount to less than six per cent, the secretary and treasurer are to appraise the value of their capital stock and report the same to the comptroller, who may change such valuation, if in his judgment it does not represent the fair value of such stock. The published statistics of the State for the past four years show that while the aggregate amount of State and local taxation approximates $50,000,000, annually, the proportion thereof which is payable exclusively, as a State tax, has varied from $3,000,000 to $6,000,000 only. It seems improbable that the legislature intended to relieve these corporations from such a burden and throw it upon individuals when no allusion whatever is made to such a result, in the act which is intended to accomplish so important a revolution. These considerations certainly call upon us to look to all of the legitimate sources of information

accessible to ascertain the object and intent of the legislature. The title of the act thus becomes an important element in ascertaining such intent. It is entitled "An act to provide for raising taxes for the use of the State." While the term "State" is used to designate the whole body politic, comprising the people and its territorial jurisdiction, it is also some times used to designate the agencies employed in administering the government which would doubtless include within its signification local as well as the properly so called State officers. When, however, it is used in reference to the subject of taxation it is generally so used in contradistinction to the term "local," and an act which is expressly described as being intended to raise a revenue for the State would not be considered as covering the subject of a support for a local object, such as the maintenance of a fire department, a police force, the lighting streets or any of the various subjects of municipal legislation. Neither can we refrain from giving some significance to the legislation of the succeeding year. Chapter 361 of the laws of that year amended section 8 of the previous year by expressly restricting the exemption therein provided for, to taxes for State purposes alone, and thus made it accord with what the respondent now claims was its original intent. Chapter 332 of the laws of the same year purports to ratify, confirm and legalize the assessments and levy of taxes in the city of New York, upon the corporations, etc., named in the act of 1880, which had been levied in disregard of the exemption now attempted to be made under that act. While a radical change in the phraseology of an act is generally to be regarded as a legislative construction that the law so amended did not as originally framed embrace the amended provisions, yet the time when, and the circumstances under which the amendment is enacted are to be regarded in construing their effect. We think these acts are to be considered as in effect declaratory of the object and intent of the prior legislation. They certainly import an almost immediate repudiation by the law-making power, of the theory that the State intended by the legislation of 1880 to exempt the property of the corporations affected thereby from local taxation. The

force which should be given to subsequent, as affecting prior legislation, depends largely upon the circumstances under which it takes place. If it follows immediately and after controversies upon the use of doubtful phraseology therein have arisen as to the true construction of the prior law it is entitled to great weight. (*People, ex rel. Mut. Life Ins. Co. of N. Y.,* v. *Board of Supervisors,* 16 N. Y. 431.) If it takes place after a considerable lapse of time and the intervention of other sessions of the legislature, a radical change of phraseology would indicate an intention to supply some provisions not embraced in the former statute. While a declaratory act has no conclusive force in the construction of prior statutes by the judiciary, yet it has usually been regarded as entitled to some consideration and weight. (*Coutant* v. *People,* 11 Wend. 513; Sedgwick on Laws and Stat. [2d ed.] 214.) In this case the legislature at the heel of its sessions pass an act which the succeeding body not only change and amend, but pass an independent act expressly intended to nullify the effect claimed by the relator to flow from the act of 1880. We must regard these facts as adding great force to the doubts created by the unmeaning expressions and apparent scope and object of the act itself. Suggestions are made in the briefs for the appellants that the legislature could not have intended to exempt one tax and not the other for the reason that it would be impracticable for the local officers to sever them. It seems to us that a sufficient answer to this suggestion is afforded by the fact that for the past two years under chapter 361 of the Laws of 1881 we have been acting under a law which did sever local from State taxes, and no complaint has been made that difficulty exists in carrying it out, so far as we know. From the considerations above stated we are induced to hold that it was not the intention of the legislature by chapter 542 of the Laws of 1880 to exempt the property of the corporations and companies therein named from taxation for local purposes.

The judgment should, therefore, be affirmed.

All concur, except EARL, J., who dissents upon the first ground.

Judgment affirmed.