THE PEOPLE ex rel. JOSEPH G. COOKE, Appellant, v. LEWIS WOOD, Receiver, etc., Respondent.

The title of an act of the Legislature in this State is proper to be considered as bearing upon the meaning and purpose of the act.

Under the provisions of the act of 1875 (chap. 517, Laws of 1875), providing "for the settlement of the floating debt of the village of Saratoga Springs," etc., before one holding a claim audited by the auditors appointed under said act as part of the floating debt of the village, can enforce or demand payment thereof, he must produce to the receiver of taxes either a warrant from a majority of the board of trustees, or one from the auditors.

If the former, it must specify the fund from which payment is to be made; and in either case it cannot be paid, unless there is money of the fund provided for the payment of such claims — *i. e.,* the avails of the bonds authorized to be issued by the act.

The minutes of the meeting, and proceedings of the board of auditors showing the audit of the claim, or an authenticated copy thereof, is not a sufficient warrant to authorize the receiver of taxes to make payment. The word "warrant," defined.

(Argued November 27, 1877; decided December 4, 1877.)

APPEAL from an order of the General Term of the Supreme Court, in the third judicial department, reversing an order of Special Term which directed the issuing of a peremptory mandamus directed to defendant as receiver of taxes of the village of Saratoga Springs, requiring him to pay a claim which had been audited and allowed to the relator by the board of auditors of said village.

The application for the writ was opposed upon the grounds, among others, that no proper warrant or draft was presented to defendant authorizing payment by him; also that the claim, if valid, belonged to and was a part of the " floating debt " of the village, the payment of which was provided for by the act (chap. 517, Laws of 1875), and that the fund thereby provided was exhausted.

*Charles S. Lester*, for appellant. The claim of the relator, as established by the board of audit, is conclusive and indisputable. (*Morris* v. *People*, 3 Den., 391; *Suprs. Onon. Co.* v. *Briggs*, 2 id., 26–33; *Demarest* v. *Day*, 32 N. Y., 281; *Met. G. L. Co.* v. *Mayor*, 9 Hun, 706; *People* v. *Collins*, 19 Wend., 56; *Swift* v. *City of Poughkeepsie*, 37 N. Y., 511; *Colton* v. *Beardsley*, 38 Barb., 29, 51; *White* v. *Coatsworth*, 2 Seld., 137, 143; *Martin* v. *Suprs. Greene Co.*, 29 N. Y., 645; 49 id., 662; *Adams* v. *Oswego Co.*, 66 Barb., 368; *Boyce* v. *Suprs. Cayuga Co.*, 20 id., 294; *People* v. *Stout*, 23 id., 338; *Bell* v. *Town of Esopus*, 49 id., 506; *Brown* v. *Town of Canton*, 4 Lans., 409; *Brady* v. *Suprs. of N. Y.*, 10 N. Y., 260.) The writ of mandamus was the only and the appropriate remedy. (*McCullough* v. *Mayor, etc.*, 23 Wend., 458; *People* v. *Suprs. of Col. Co.*, 10 id., 363; *Buck* v. *City of Lockport*, 6 Lans.. 251; *People* v. *Hawkins*, 46 N. Y., 11; *People* v. *Mead*, 24 id., 123; *People* v. *Suprs. of Liv. Co.*, 4 Wkly. Dig., 87; *People* v. *Town Auditors*, 53 Barb., 555; *People* v. *Edmonds*, 19 id., 468; 15 id., 529; *People* v. *Newell*, 13 id., 86; *People* v. *Stout*, 23 id., 338; *Huff* v. *Knapp*, 1 Seld., 65; *People* v. *Suprs. of Herk. Co.*, 56 Barb., 452; *People* v. *Greene*, 46 How., 308; *People* v. *Allen*, 1 Lans., 248; *Boyce* v. *Suprs. of Cayuga Co.*, 20 Barb., 294; *People* v. *Suprs. of Chenango Co.*, 8 N. Y., 317.)

*A. Pond*, for respondent. The relator's remedy was by action and not by mandamus. (*Marsh* v. *Town of Little Valley*, 2 Wkly. Dig., 48; id., 84; 58 N. Y., 305; 46 id.,

9, 11; 1 Kern, 563; 7 Hun, 608; 1 id., 1; 5 id., 305; *Ex parte Lynch*, 2 Hill, 45; *People* v. *Thompson*, 25 Barb., 73; *People* v. *Martin*, 62 id., 570; *People* v. *Haws*, 37 id., 440.) The fact that the claim had been audited does not prevent the remedy by action. (*Buck* v. *City of Lockport*, 6 Lans., 251; *Schenck* v. *Mayor, etc.*, 3 Wkly. Dig., 346; *Met. Gas Co.* v. *Mayor, etc.*, 9 Hun, 706; *Lanigan* v. *Mayor, etc.*, 16 Alb. L. J., 264; *People* v. *Wendell*, MSS. of Ct. of Appeals.) A debt must be established before a peremptory mandamus will be directed to enforce its payment. (*People* v. *Suprs., etc.*, 3 Wkly. Dig., 13; 14 Alb. L. J., 100; 5 Hun, 650; 3 id., 11; *People* v. *Burrows*, 27 Barb., 89; *People* v. *Green*, 5 N. Y. S. C., 378; *People* v. *Booth*, 32 How., 17, 19; *People* v. *Mead*, 24 N. Y., 114, 127; *Turner* v. *Roby*, 3 id., 193; *Bd. Suprs.* v. *Ellis*, 59 id., 620, *Stone* v. *Miller*, 62 Barb., 430, 442; *Corwin* v. *Merritt*, 3 id., 341; *Frees* v. *Ford*, 2 Seld., 176: *Simmons* v. *De Barre*, 8 Abb., 269.) The claims were not such as the board of trustees had power to contract or create. (Laws 1866, chap. 220, § 61; *McDonald* v. *Mayor, etc.*, 4 Wkly. Dig., 75; *Nelson* v. *Mayor, etc.*, 63 N. Y., 535, 542; *Donovan* v. *Mayor, etc.*, 33 id., 291, 293; *People* v. *Green*, 47 How., 382, 384; 56 N. Y., 476; 3 Wkly. Dig., 225; *People* v. *Tappen*, id., 572.) The relator could not demand payment without presenting a warrant to the receiver. (*People* v. *Green*, 56 N. Y., 476; 3 Wkly. Dig., 225; *People* v. *Bd., etc.*, id., 13; *People* v. *Tappen*, id., 572.)

FOLGER, J. In the view which we take of this case, it is not needed that we speak of many points raised by either side. It is our judgment that the relator is not entitled to a mandamus, and that the order of the General Term appealed from should be affirmed. We will briefly state our reasons.

In 1875, (Laws of 1875, chap. 517, p. 596), the Legislature enacted a statute to empower the trustees of the village of Saratoga Springs to raise $20,000, by an issue of the

bonds of the municipality to that amount. This authority is given by the first section of the act. Though that section does not declare the purpose for which that sum is to be used when realized, yet the purpose is expressed in the title of the act, and is to be inferred from some of the provisions of the second section. The title of the act speaks of the floating debt of the village, as does also the second section. Now, though it has been held that the title of an act is no part of it; (*Poulter's Case*, 11 Rep., 336; *Chance* v. *Adams*, 1 Ld. Raym., 77; *Mills* v. *Wilkins*, 6 Mod., 62; *Att'y-Gen.* v. *Weymouth*, Ambl., 22; *Rex* v. *Williams*, 1 W. Bl., 95; *Hunter* v. *Nockolds*, 1 McN. & G., 651; *Salkeld* v. *Johnson*, 2 Exch., 283; *Graves* v. *Ashford*, L. R., 2 C. P., 417; *Hadden* v. *Collector*, 5 Wal., 107); it has also been held that it is (*Johnson* v. *Upham*, 2 E. & E., 250; *Taylor* v. *Newman*, 4 B. & S., 89; *Wood* v. *Rowcliffe*, 6 Hare, 191; *Rex* v. *Gwenop*, 5 T. R., 135; *Free* v. *Burgoyne*, 5 B. & C., 400; *U. S.* v. *Fisher*, 2 Cranch, 386; *Same* v. *Palmer*, 3 Wheat., 631) ; and it has been held that the title of an act explains the meaning of an act. (*Bailie's Case*, 1 Leach's Cases, 442.) In this State and in this case, the title is certainly of moment, for the Constitution provides that no local or private act — the act under consideration being a local act — shall be passed by the Legislature, unless the subject of it be expressed in the title; (Const., Art. 3, sec. 16); and the rules and practice of the two Houses of Legislature provide for the reading and amendment of the title with as much caution as of the body of the bill : surely the title, in the legislation of this State, bears upon the meaning and purpose of the act.

The second section of this act also distinguishes the floating debt of the village, and the claims which go to make it up, from the future debt of the village and the claims which go to make that up. We may safely conclude, that the purpose recognized and sanctioned by the act, in the authority given by it to raise money by the issue of municipal bonds, was to pay off the floating debt of the village. By the term, "floating debt," is meant that mass of lawful and valid claims against

the corporation, for the payment of which there is no money in the corporate treasury specifically designed, nor any taxation or other means of providing money to pay, particularly provided.

The claim of the relator was, if valid, a part of the floating debt of the village, and entitled to payment out of the avails of the bonds to be issued. The act, in terms, puts all the village debt into two classes, the floating debt and the future debt, and gives the auditors no power over any other. As the act was passed on the 7th of June, 1875, the future debt must have been that which would arise after that date, and the floating debt must have been that debt which was existing when the act was passed. It is claimed. by the defendant and conceded by the relator, that the claim of the latter arose before that date. So it was a part of the floating debt.

We have been the more particular in the foregoing statement, because controlling facts are thereby shown to exist. That act did not repeal or change many material provisions of the village charter. One of them is, that no money is to be paid from the village treasury, save on a warrant from the trustees or a majority of them, countersigned by the clerk, specifying the fund from which it is to be paid, and prohibiting payment, unless there is money of that fund from which to pay. (Laws of 1866, chap. 220, p. 484, sec. 18.) Another is that all provisions of law applicable to a village treasurer shall apply to the receiver of taxes of this village, unless inconsistent. (Laws of 1872, chap. 323, p. 816, sec. 8.) If this last cited section means by the phrase " a village treasurer," the former officer of this village, whose official place, the defendant has taken, by virtue of his office, then the section penultimately cited applies to the defendant. If it means any village treasurer, then we find that the general law for the incorporation of villages provides that no money shall be paid from the treasury, save on the warrant of the trustees. (See 7 Edmonds. Stats., p. 694, sec. 2.)

If it be contended that the special act of 1875 is alone

controlling, then we find that the first section of it provides that there should be no payment from the avails of the bonds, save on the warrant of the auditors. So that in any case, the relator, before he can enforce or demand payment of his claim, must produce to the receiver of taxes a warrant from a majority of the board of trustees, or one from the auditors. In the former case it must specify the fund from which payment is to be made, and may not be paid unless there is money of that fund. In the latter case, if the avails of the bonds have been exhausted, there is no fund at present existing from which payment may be made.

It is claimed that the minutes of the meeting and proceedings of the board of village auditors showing the audit of the plaintiff's claim, or an authenticated copy of it, is the warrant of the auditors, sufficient to comply with the act and to defend the receiver of taxes in making payment. We are not of that mind. It is not addressed to, nor contemplative of, the defendant. It is in no sense meant, or operative as a voucher for him, or a direction, or authority to him to pay; whatever may be the definition of the word warrant given by lexicographers, a lawyer's idea of the thing is a writing from a competent authority in pursuance of law, directing the doing of an act, and addressed to an officer or person competent to do the act, and affording him protection from damage, if he does it. This copy of minutes would not answer such a purpose.

It follows, that under none of the laws cited to us, as applicable to this matter, has the relator shown himself legally qualified to set the defendant in motion, or to ask the courts to do so for him.

All concur.

Order affirmed.