JOSEPH G. COOKE, RESPONDENT, *v.* THE VILLAGE OF SARATOGA SPRINGS, APPELLANT.

*Meaning of the term " floating debt " in chapter 517 of 1875— Charter of Saratoga Springs—for what claims the village is not liable—when it is liable where the money raised to pay a claim has been wrongfully diverted.*

Chapter 517 of 1875, providing for the settlement of the floating debt of the village of Saratoga Springs, after creating a board of auditors, declares "that their first duty shall be to thoroughly examine and investigate all claims and accounts against said village embraced in the floating debt thereof, and to audit and allow so much of the same as is just and equitable."

*Held,* that by the term "floating debt" was meant only the unpaid legally-authorized obligations of the village, and that it did not include a claim for services rendered or supplies furnished in violation of section 61 of its charter (chapter 220 of 1866, as amended by chapter 760 of 1871) which provides that no debt shall be incurred or created, nor any expenditure made until the money or tax for that specific object shall have been voted or raised.

*Held,* further, that when the bills incurred for any specific object did not exceed the money voted and raised therefor, the rights of the owners of such bills were not affected by the wrongful diversion of the money to other purposes.

The act of 1875 provided that no suit should be brought against the village except upon audited bills.

*Held,* that interest on the claims could only be allowed from the time of their audit.

APPEAL from a judgment in favor of the plaintiff, entered upon a trial before the court without a jury

This action was brought to recover for work, labor and services performed, money laid out and expended, and materials furnished, at the request of the board of trustees of the defendant, for the purpose of sustaining the several departments of the said village and defraying the expenses of the corporation, to the amount and value of $2,176.45. It is alleged in the complaint that the bills for such labor and materials were duly made and presented to the board of trustees of the said village, verified by the oath of the plaintiff or his agents, and were duly examined, approved, audited, allowed and certified to by the said board, as provided by law ; that the said bills and accounts were afterwards duly presented to the village auditors of the said village, and were examined and investigated by them, and on November 18, 1876, duly approved, audited and allowed, with interest from August 1, 1875. The complaint further alleges that after such audits and certification, such bills and certificates were duly presented to the receiver of taxes and assessments for the town and village of Saratoga Springs, and payment demanded, which was refused, except $51.17, paid on November 18, 1876.

The defense set up in the answer is a general denial, except to the allegation that the defendant is a municipal corporation. Also that, at the time of contracting the alleged indebtedness, the defendant was prohibited by its charter from contracting the debt, for the reason that no money or tax for that specific object had been voted or levied as required by such charter, and that there was no fund afterwards in the treasury or in the hands of the receiver of taxes upon which any warrant or draft could be given to pay said claim or any portion of it. That on June 7, 1875, the legislature passed an act entitled " An act to provide for the settlement of the floating debt of the village of Saratoga Springs, and authorizing the election of a permanent board of auditors for the said village." That $20,000 was raised, as authorized by the said act, and the board of auditors thereby authorized, audited and paid on account of the said floating debt the whole amount appropriated for that purpose, and no payment was made on account of the plaintiff's demand; that the plaintiff's claim was never presented to the said board, certified and verified as required by the act of 1875, and that

the said board never acquired jurisdiction to audit and allow the said claim.

Upon the trial no claim was made by the defendant's counsel that the several items making up the amount of the plaintiff's claim had not been ordered by the proper officers of the corporation, nor that the articles had not been delivered and the services performed as charged in the bill, nor that the price charged in such bills was greater than the actual values of the same, nor that the corporation had failed to receive the property and the benefit of the services charged for. No evidence was given to impeach the regularity of the proceedings of the board of trustees, nor the board of auditors, in auditing the plaintiff's bills, nor is any point made upon the regularity of these audits.

The principal question litigated was as to the effect of the act of 1875 upon the provisions of the charter, and the audit and allowance of the plaintiff's claim. The plaintiff's whole claim accrued before the passage of the act of 1875, except the bill furnished to the street department for November, 1875, $3.25.

*L. B. Pike*, for the appellant.

*C. S. Lester*, for the respondent.

LANDON, J.:

Chapter 517, Laws of 1875, entitled "An act to provide for the settlement of the floating debt of the village of Saratoga Springs, and authorizing the election of a permanent board of auditors for said village," after providing for the creation of the board of auditors, declares that "their first duty shall be to thoroughly examine and investigate all claims. and accounts against said village, embraced in the floating debt thereof, and to audit and allow so much of the same as is just and equitable." The act also provides for the creation of a fund of $20,000, to pay the floating debt, and to be paid upon the warrant of the auditing board. Further provision is made for "future claims" against the village. All of the plaintiff's claim against the defendant, except $3.25 thereof, arose before the passage of this act. One question to be determined is whether the claim was at the date of the passage of

the act a "floating debt" against the village. The village of Saratoga Springs has by its charter certain limited powers within which it can incur debts and make expenditures. (Laws 1866, ch. 220, as amended by Laws 1871, ch. 760.) By section 54 it is authorized, by its board of trustees, to levy and collect an annual tax, not to exceed the following sums for the following departments; Street Department, $7,500; Lamp Department, as much as may be necessary; Fire Department, $2,500; Cemetery, $100; Miscellaneous, $250. The claim of the plaintiff is for services and materials rendered the village on account of these several departments. Section 61 of the charter provides that " no debt shall be incurred or created by said village . . . nor shall any expenditure be made or incurred until the money or tax for that specific object shall have been voted or levied." By the terms of this section no debt, floating or otherwise, could have been created or incurred, unless the money or tax for that object had been voted or levied previously to incurring the same. We are unable to subscribe to the opinion of the learned judge before whom the case was tried, to the effect that the floating debt contemplated by the act includes claims not sanctioned by the charter, but just and equitable in themselves. Such construction apparently imputes to the legislature an intent to sanction claims unauthorized by law, and created in violation of law. The words "just and equitable" may as well apply to authorized, as unauthorized expenditures. Take the plaintiff's claim for services and materials rendered the lamp department, for illustration. We shall show hereafter that this portion of his demand was properly authorized. But it is easy to see that the services and materials might be so overcharged, both as to the amount rendered as well as the price for the same, as to make the aggregate of the demand unjust and inequitable. In such case the act permits the audit of so much thereof as is just and equitable. Besides it is not difficult to see that a floating debt might arise from the non-payment of strictly authorized debts. Unexpected liabilities, as judgments for negligence, or deficits from taxes unpaid, or from funds diverted, might and probably did leave the village with a floating debt, lawfully incurred, and just and equitable. The Court of Appeals in an earlier stage of this litiga-

tion (*People* ex rel. *Cooke* v. *Wood*, 71 N. Y., 371) defined the term "floating debt" as used in this act to mean "lawful and valid claims against the corporation." We do not understand that court to hold that claims destitute of all legal warrant were made by that act a part of the floating debt of the village. Nor did the audit by the board of auditors confer upon them that character. They could audit only the "floating debts," namely, the unpaid, legally authorized obligations of the village. The act confers no power upon the board to validate invalid demands. It did not enlarge the obligations of the village; it merely provided for ascertaining and paying those already existing.

The evidence and the facts found by the court below enable us to see what part of the plaintiff's claim was authorized, and therefore entitled, upon its audit, to be paid. .

There was audited and allowed him $1,220.49 for services rendered and materials furnished the lamp department. The court below found, that within the authority of the charter, more money had been voted and levied for this department than was necessary to pay this and all its other bills, but that $2,000 thereof had been diverted to purposes outside of the department. The plaintiff was not a party to that diversion, and cannot be injured by it.

The village cannot escape its obligations because it has misapplied the money provided to meet them. (*Smith* v. *Mayor*, 5 Hun, 237; *Van Wart* v. *Mayor*, 52 How. Pr., 78; *People* ex rel. *Dannat* v. *Comptroller*, 77 N. Y., 45; *People* ex rel. *Childs* v. *Cartwright*, 9 Hun, 159.)

It is conceded in the brief of the defendant's counsel, that there were $18.37 applicable to the payment of that part of plaintiff's bill consisting of services and materials furnished the street department; also $122.75 to the credit of the cemetery department, $48.48 to the credit of the fire department, and $4.33 to the credit of the miscellaneous department, applicable to the payment of the plaintiff's bills at the time they were incurred. For these sums, amounting in the aggregate to $1,414.42, the plaintiff was entitled to recover. The act of 1875 provides that no suit shall be brought against the village, except upon an audited bill. Interest cannot accrue upon an unliquidated claim until the obligation to

pay arises. (*Van Wart* v. *Mayor*, 52 How. Pr., 78.) Interest must, therefore, be limited to the date of the audit, namely, November 18, 1876. The judgment should be modified accordingly, and as so modified, affirmed, without costs in this court.

LEARNED, P. J., concurred; BOCKES, J., taking no part.

Judgment modified by reducing plaintiff's recovery to $1,414.82, with interest from October 18, 1876, with costs in the court below, and, as modified, affirmed, with costs in this court.