ULLMAN *v.* MEYER.*

(*Circuit Court, S. D. New York.* January 31, 1882.

1. STATUTE OF FRAUDS—PROMISES TO MARRY.

> The provision of the statute of frauds requiring all agreements not to be performed within a year to be in writing, applies to promises to marry. The exception in the third section of the statute does not withdraw agreements to marry altogether from its operation.

Motion for New Trial.

WALLACE, D. J. I am constrained to hold that the defendant was erroneously precluded from the benefit of his defence under the statute of frauds on the trial of the action, and that the construction of the statute, which, upon a hasty reading seemed correct, cannot be maintained. The case turns upon the construction of the statute of frauds, the phraseology of which differs from that of the statute of Charles II. It is stated in Parsons on Contracts, (vol. 3, p. 3,) that although provisions substantially similar have been made by the statutes of this country, in no one state is the English statute exactly copied.

It was alleged in the present case, and the evidence tended to show, that by the terms of the agreement of marriage between the parties the marriage was not to take place until some time after the expiration

*Reported by S. Nelson White, Esq., of the New York bar.

of one year. It was held that, by force of the exception in the third section of our statute, promises to marry were not required to be in writing under any circumstances, the view being taken that it was the intention of the statute to withdraw agreements to marry altogether from its operation.

As an original proposition it might be debated whether the statute of frauds was ever intended to apply to agreements to marry. They are agreements of a private and confidential nature, which, in countries where the common law prevails, are usually proved by circumstantial evidence, and at the time the English statute was passed were not actionable at law, but were the subjects of proceedings in the ecclesiastical courts to compel performance of them. Nevertheless, at an early day after such actions became cognizable in courts of law the defence of the statute of frauds was interposed, under that clause of the statute which denies a right of action upon any agreement made upon consideration of marriage unless the agreement is in writing; and though it was held that such clause only related to agreement for marriage settlements, there seems to have been no doubt in the minds of the judges that promises to marry were within the general purview of the statute. In our own country, in *Derby* v. *Phelps*, 2 N. H. 515, the question was directly decided, and it was held that although the defence could not be maintained under the marriage clause of the statute, it was tenable under the clause requiring all agreements not to be performed within a year to be in writing. To the same effect are *Nichols* v. *Weaver*, 7 Kan. 373, and *Lawrence* v. *Cooke*, 56 Me. 193.

The question has never been presented in our own state, and the ruling upon the trial was made under the impression that the exception in the third clause of our statute was meaningless, unless intended to relate to all the clauses. It was entirely unnecessary if limited to the particular clause in which it is placed, because by the settled construction of the statute the clause did not apply to the excepted class of promises. 1 Ld. Raym. 387; 1 Strange, 34. When English statutes, such as the statute of frauds, have been adopted into our own legislation, the known and settled construction of these statutes has been considered as silently incorporated into the acts. *Pennock* v. *Dialogue*, 2 Pet. 1.

A more careful examination has, however, satisfied me that the only purpose of inserting the exception was by way of explanation, and to remove any doubt as to the meaning of the clause by incorporating into it expressly what would otherwise have been left to im-

plication. This conclusion is more reasonable than the supposition that so important an innovation upon the statute of frauds would have been engrafted so ambiguously. If it had been intended to exclude promises of marriage altogether from the operation of the statute, it could have been plainly evinced by inserting the exception where it would naturally apply to all the classes of promises required to be in writing; as it is, it more obviously refers to the marriage clause, and the class of promises covered by that clause. It has no necessary relation to the other classes of promises. While the letters of the parties show a marriage engagement, the terms of the engagement and the time of the marriage are not indicated sufficiently to take the case out of the statute. The evidence offered to show that the promise of the defendant was not, by its terms, to be performed within a year, was sufficient to present a question of fact for the jury.

As this question was withdrawn from their consideration, there must be a new trial.