MARY BRICK, an Infant, by JOHN FLANAGAN, her Guardian ad Litem, Respondent, v. JOHN GANNAR,. Appellant.

*Statute of frauds — 3 R. S. (7th ed.), 2327, sec. 2 — it is not applicable to mutual' promises to marry — the title of an act is to be considered in construing it.*

Section 2 of 3 Revised Statutes (7th ed.), 2327, providing that every agreement that, by its terms, is not to be performed within one year from the making thereof, shall be void unless such agreement, or some note or memorandum thereof, be in writing and subscribed by the party to be charged therewith, does not apply to an agreement between two parties to marry.

*Ullman* v. *Meyer* (10 Abb. N. C., 281), not followed; *Derby* v. *Phelps* (2 N. H., 515); *Nichols* v. *Weaver* (7 Kan., 377); *Lawrence* v. *Cooke* (56 Me., 193), distinguished.

It is the settled law of this State that the title of an act may be resorted to to aid in discovering the design of the legislature, and to limit the meaning of general words employed therein.

APPEAL by the defendant from a judgment in favor of the plaintiff, entered upon the verdict of a jury.

*De Merville Page*, for the respondent.

*I. W. Near*, for the appellant.

CORLETT, J. :

The complaint alleges in substance that on the 10th day of October, 1881, at Hornellsville, in the county of Steuben, mutual promises to marry in the month of May, 1883, were made between the parties. That on the 28th day of December, 1882, the defendant violated his promise by marrying one Agnes Carroll. The answer alleged that there was a conditional marriage agreement between them, which was to the effect that if both continued in the same state of mind, and neither became dissatisfied, they would get married when both were ready. The rest of the complaint was denied.

On the trial in November, 1883, before Justice DWIGHT and a jury, the plaintiff gave evidence tending to prove the complaint, also tending to show that the defendant continued his attentions to the plaintiff as a suitor until the 10th day of December, 1882, and took her to visit his parents in the month of October of that year,

where she remained about two weeks. The defendant gave evidence tending to a certain extent to prove the allegations in the answer. The jury found a verdict in favor of the plaintiff, upon which judgment was entered.

The main contention on the part of the defendant on the trial was that the contract was void under the statute of frauds, because, by its terms, it could not be performed within a year from the time it was made.

The learned justice assumed that the statute of frauds applied to this contract, but left to the jury the question whether there was " at or about the time mentioned in the complaint an unconditional mutual promise to marry between the parties to this action, such marriage to take place in or about the month of May, 1883." Also, " second, was there a renewal of such mutual promise or agreement between the parties within one year before the said month of May, 1883, when the marriage was to take place." The jury answered both questions in the affirmative. The defendant's counsel excepted to the second submission and finding.

As the question whether an agreement to marry is within the statute, is in this case, it is proper to determine it. Title 2 of chapter 7, 3 Revised Statutes (7th ed., 2327), is as follows : " Of fraudulent conveyances and contracts *relative to goods, chattels and things in action.*" Section 2 of that title is as follows : " In the following cases every agreement shall be void unless such agreement or some note or memorandum thereof be in writing and subscribed by the party to be charged therewith :

" 1. Every agreement that, by its terms, is not to be performed within one year from the making thereof."

" 2. Every special promise to answer for the debt, default or miscarriage of another person."

" 3. Every agreement, promise or undertaking made upon consideration of marriage except mutual promise to marry."

The statute of frauds was enacted in England in 1678, during the reign of Charles II, and was re-enacted by the legislature of this State in 1787. (1 Rev. Laws [1813], p. 78, § 11.) Contracts of marriage were not actionable at law before the English statute was passed, but were subjects of proceedings in the ecclesiastical courts to compel specific performance. These contracts, therefore, were

not within the mischiefs which caused the passage of the statute. Although actions at law have long been maintainable in England on such contracts, no defense based upon the statute of frauds has ever been interposed in that country as far as the reported cases disclose. In *Costigan* v. *Mohawk and Hudson Railroad Company* (2 Denio, 609–613), the court says, in discussing the significance of the fact that a particular defense was never made : "The entire novelty of such a defense affords a very strong, if not a decisive, argument against its solidity." (Citing *Duke of New Castle* v. *Clark*, 8 Taunt., 602.)

Every marriage involves a contract between the parties. Numerous actions for breach of promise have been brought in England. The fact that no such defense was ever made or heard of is cogent evidence against it. The impropriety of requiring that such contracts should be in writing, is stated in Smith on Contracts (pp. 97, 98), where the distinguished author observes : "It has been decided that an agreement between two persons to marry is not an agreement in consideration of marriage within the meaning of this enactment, *it probably having been considered that the legislature did not intend to introduce a practice so contrary to the natural usages of life*, but that these terms are confined to promises to do something in consideration of marriage, other than the performance of the contract of marriage itself." (Citing *Cork* v. *Baker*, 1 Strange, 34; *Harrison* v. *Cage*, 1 Ld. Raymond, 386.)

Those decisions were made when there was no exception in the statute such as is contained in subdivision 3 above quoted. While the remarks of the learned author relate to contracts in consideration of marriage, still the words italicised apply with the same force and cogency to mutual promises to marry. To require those promises to be reduced to writing, to prevent their being utterly void, if not to be performed within one year, would certainly "*be contrary to the natural usages of life*." The above reasoning applies with full force to decisions of the courts of this State. There is no reported case in this State where such a defense was interposed.

The title of the statute above quoted clearly shows that mutual promises to marry were not among the contracts intended to be included. The words "of fraudulent conveyances and contracts *relative to goods, chattels and things in action*," certainly do not

include or refer to mutual promises to marry. That statute, by the express words of the title, is confined to goods, chattels and things in action.

It is the settled law in this State that the title may be resorted to to aid in discovering the design of the legislature, and to limit the meaning of general words. (*People ex rel. Cooke* v. *Wood*, 71 N. Y., 371; *Jones* v. *Sheldon*, 50 id., 477; *People* v. *Molyneux*, 40 id., 113; *Bishop* v. *Barton*, 2 Hun, 436; Potter's Dwarris, Stat., 121–146: *People ex rel. Westchester Ins. Co.* v. *Davenport*, 91 N. Y., 574; *Smith* v. *People*, 47 id., 330; *People ex rel. Wood* v. *Draper*, 15 id., 531; *White* v. *Wager*, 32 Barb., 250; affirmed, 25 N.Y., 328.)

In *Young* v. *Dake* (5 N. Y., 463), the principle in this case was decided.

In was held in the Supreme Court (*Crosswell* v. *Crane*, 7 Barb., 191), that a parol lease of lands for one year, to commence at a subsequent period, was void. In overruling that decision the Court of Appeals (page 468), say: "That provision of the statute is a part of title II of the statute to prevent frauds in conveyances and contracts; *and the whole of that title* and all its provisions has reference only to 'fraudulent conveyances and contracts relative to goods, chattels and things in action.' It is very obvious that none of its provisions have any application to, or effect upon contracts or agreements concerning lands or interest in lands. The *first title* of the statute performs that office. The *second title* *applies to contracts and transactions affecting personal property only.* The learned court of the 5th District must have overlooked this fact when that part of the opinion was adopted which supposes that the agreement or lease in question came within its provisions."

The above quotation is a perfect answer to *Ullman* v. *Meyer* (U. S. Circuit Ct., Southern Dist. of N. Y., 10 Abb. N. C., 281). The learned judge in that case overlooked the title of the statute, the same as the Supreme Court did in the seventh of Barbour. On page 282 he uses the following language: "As an original proposition, it might be debated whether the statute of frauds was ever intended to apply to agreements to marry."

But he feels constrained to follow the decisions in three States in this country.

The first was *Derby* v. *Phelps* (2 N. H., 515). The title to the statute of frauds in New Hampshire is simply "Actions." There are no words of limitation in the title.

The next case is *Nichols* v. *Weaver* (7 Kan., 377), which is based upon the authority of the New Hampshire case, *but* the title of the Kansas statute is simply "frauds and perjuries."

In the third case (*Lawrence* v. *Cooke*, 56 Me., 193) the question was not decided, but the title of the statute in that State does not confine its applications. It is as follows: "Prevention of frauds and perjuries in contracts and actions founded thereon."

It is evident, therefore, that if those cases were well decided they have no application to this case.

The title to the statute in those States contains no words limiting the application of the general language used in the acts. And the decision of the learned judge of the Circuit Court of the United States rests upon those cases and not upon the statute in this State. It is contrary to every known attribute or instinct of human nature to suppose that the legislature intended to make mutual contracts of marriage void unless reduced to writing. It, therefore, confined the statute to the contracts embraced within the title.

It follows that this contract was valid and not within the statute of frauds; but even if it was the trial justice was right in submitting the question of a mutual promise within a year before the time of performance to the jury. If there was no valid contract of marriage subsisting between them because of the statute, the con-duct of the parties and their relations towards each other furnished evidence which warranted the jury in finding a meeting of the minds of the parties. (*Homan* v. *Earle*, 53 N. Y., 267 ; *Southard* v. *Rexford*, 6 Cow., 254; *Kniffen* v. *McConnell*, 30 N. Y., 285 ; *Fowler* v. *Martin*, 1 Sup. Ct. [T. & C.], 377.)

The variance as to time was of no importance. (Code of Civ. Pro., secs. 539, 540.) The rulings upon the trial to which exceptions were taken were proper and are not such as to require particular consideration.

The judgment must be affirmed.

Present — BARKER, P. J., HAIGHT, BRADLEY and CORLETT, JJ.

Judgment affirmed.