## MULLANPHY BANK ET AL.
### v.
## OTTO G. SCHOTT ET AL.

*Corporations—Insolvency of—Priority of Liens—Evidence—Indebted-
ness to Officer of Corporation—Estoppel in Pais—Floating Indebtedness
—Delivery of Bonds of Corporation to Officer (who was also a creditor) for
Vote.*

1.   A person who is treasurer and director of a corporation, has the right
to loan money to it and take security by mortgage for such loan.

2. In order that the acts or words of a party may operate as an estoppel *in pais*, such acts or words must be fraudulent in purpose, and must also have influenced the conduct of the party seeking to set up the estoppel to his detriment.

3. The evidence fails to disclose any facts sufficient to charge the treasurer and director of the corporation in question with fraud, or to estop him from enforcing his mortgage, which was prior in point of time to that of appellants.

4. A record in the recorder's office of resolutions of the corporation providing for the issue of appellants' incumbrance, was properly excluded, the statute not providing for and making such a record admissible, as in the case of deeds, etc., and no proper foundation having been laid for its introduction as secondary evidence.

5. The delivery of certain bonds of the corporation to appellees for the purpose of selling the same, did not, under the circumstances, operate as a liquidation of his debt against the corporation.

[Opinion filed February 4, 1890.]

APPEAL from the Circuit Court of St. Clair County; the Hon. WM. H. SNYDER, Judge, presiding.

Julius A. Barnsback, The American Powder Co., and Robert Klitzing, filed a bill in chancery in the Madison Circuit Court, averring the recovery of certain judgments against the Brookside Coal & Coke Co., the execution of certain mortgages that are alleged to be fraudulent, and averring the insolvency of the Brookside Coal & Coke Co. The bill avers further certain rights in Barnsback as lessor of lands, and charges fraudulent acts of certain officers of the Brookside Coal and Coke Co., and prays the appointment of a receiver, the marshaling of assets, the settlement of the affairs of the company, and makes certain mortgagees, trustees, judgment creditors, stockholders and officers of the company defendants.

Louis Schlosstein files an intervening petition and by leave of court files his answer and cross-bill, in which it is averred that on the 22d day of September, 1881, the Brookside Coal Co. executed three notes to Martin J. Schott, two for $1,665, each payable respectively in one and two years after date, the other for $1,670, payable three years after date, all bearing interest at the rate of eight per cent per annum; that to

secure payment of said notes the said company, on the 19th day of October, 1881, executed a mortgage to Schott on the real estate of said company, and that the mortgage was recorded November 17, 1881; that Schott, for a good and valuable consideration, prior to the maturity of said notes and each of them, assigned to Schlosstein the said notes, whereby he became a legal and equitable holder and owner of them, and avers that the lien of said mortgage is a first and prior lien upon the property described therein.

William H. Krome, trustee in a certain deed of trust, and certain other persons, filed answers and cross-bills. In the cross-bill it is alleged that on the 17th day of June, 1882, and prior to the date of the judgments obtained by complainants in original bill, the Brookside Coal Co., for and in consideration of $15,000, really and in good faith paid to the company, executed and delivered to Ed. B. Huegy thirty bonds, each bearing date June 17, 1882, each for $500, and bearing interest from date at seven per cent per annum, interest to be paid semi-annually, on June 17th and December 17th of each year, on presentation of coupons thereto attached, at the Mullanphy Savings Bank, St. Louis, Mo., which bonds provide that in case of non-payment of any half-yearly installment of interest, each should become due; if such default should continue three months after maturity of said installment, then the principal in such bond should become due; which bonds were signed by William Freudenau, president, and William Kombrink, secretary, of said company, and countersigned by William H. Krome, trustee, and made payable to Ed. H. Huegy, or bearer, at Mullanphy Savings Bank, St. Louis, Mo., on the 17th day of June, 1892, and numbered from 1 to 30, inclusive; that to secure the payment of principal and interest of said bonds, said company on the 17th of June, 1882, by its deed of trust, conveyed to William H. Krome, trustee, in trust for the holders of said bonds and coupons, and to secure the same, and the performance of certain other covenants in said deed, certain property in said deed described, it being the interest of the said company in the lands and in the fixtures of such coal mine.

It is further averred that the lien of said deed of trust and

the bonds and coupons thereby secured is superior to that acquired by complainant in the original bill by virtue of judgments therein mentioned, or any of them, and avers further that it is superior to any lien or judgment of any kind in the bill mentioned, and avers that it is superior and prior to the lien alleged to exist on property in favor of Louis Schlosstein.

The cross-bill further avers who are the holders of the bond so issued, the Mullanphy Bank and others being the holders and parties.

The answer of John Alexander, holder of certificates secured by mortgage executed to John O. Evans, Sr., of date January 21, 1885, recorded, etc., to secure $3,500, and such interest as might accrue according to certificates executed by the company, bearing date January 21, 1885, payable to the order of said John O. Evans, Sr., or bearer, and numbered from 1 to 178, consecutively, and amounting to $3,500, payable at the option of the company, at its office at Brookside, with interest at six per cent per annum from date, on or before January 21, 1887, and alleging the mortgage is a lien upon the real and personal property in the mortgage described, and that it was made in good faith and given to secure *bona fide* indebtedness for a valuable consideration, and that the defendant is holder of certificates secured by said mortgage, and naming certain certificates, and alleging that he is entitled to the appropriation of the mortgaged property to his certificates to the exclusion of other creditors, stockholders or parties interested in the mortgaged property, and alleging that said claims were also secured by chattel mortgage, dated January 25, 1885, duly acknowledged and recorded, and claiming the same to be a valid and first lien on all the personal property, goods and chattels of the company.

The answer of certain judgment creditors of the Brookside Coal & Coke Company, in order of seniority, as follows:

Daniel Thomas, transcript filed in the Circuit Court February 26, 1885........................ $138.26

A judgment, February term, 1885, in the County Court of Madison County, in favor of the American Powder Company, for.................. 554.00

And in favor of the same company........... 739.57

Judgments in the Circuit Court of Madison County
for the March term, 1885, in favor of Julius A.
Barnsback for.............................. $   823.64
Robert Klitzing..............................     474.85
Schott and Kombrink.........................   4,506.10
William Kombrink............................   1,767.55
Bryar-Brown Shoe Company...................      83.78
Martin J. Schott.............................   2,540.80
Martin J. Schott.............................   2,661.80
E. C. Meacham Arms Company.................     221.65
Evans & Howard.............................     476.90
Eli Burke....................................   1,029.00
John O. Evans, Sr............................     254.32
Grant Coal Company..........................     254.81
Mullanphy Savings Bank......................      62.82
Ed. Zanders.................................     208.60
In the Circuit Court of Madison County, at the
October term, 1885, Chris G. Kaufman........     199.44

On a motion made in the Circuit Court on the coming in of
the answers to the original bill and the filing of the cross-bills,
by order of the Circuit Court a receiver was appointed, and
all of the coal shafts, escapement shafts, side-tracks, fixtures,
buildings, structures, engines, boilers, machinery, tools, venti-
lating fans, coke ovens, elevators, coal cars, weighing scales
and all other real and personal property owned and used by
the Brookside Coal & Coke Company were sold by the
receiver under the order of the Circuit Court to the Consoli-
dated Coal Company, for $16,000, and at the time of the
rendition of the final decree, the receiver reported in his hands
the sum of $16,148.16. Otto G. Schott filed a supplemental
bill averring that since the commencement of the suit he has
become the holder for value, of the notes in the cross-bill of
Louis Schlosstein described, and alleging a priority of the lien
of the mortgage to secure the same, and asking a foreclosure
of the same.

Other defendants filed answers and certain others were
defaulted. On the hearing, certain resolutions adopted at a
meeting of the Brookside Coal Company were offered as evi-

dence, which, on objection, were by the court excluded, and to which ruling of the court and sustaining the objection an exception was taken, which resolutions were as follows:

"Resolution authorizing issue of bonds of the Brookside Coal Company. At a regular meeting of the directors of the Brookside Coal Company, held this 17th day of June, 1882, it was

Resolved, That for the purpose of paying the floating indebtedness now due against the real estate owned by said Brookside Coal Company, there be issued thirty bonds of $500 each, and that said bonds bear date June 17, 1882, and to be made payable at the Mullanphy Savings Bank, St. Louis, Mo., June 17, 1892, with seven per cent interest from date, interest payable semi-annually. It was further

Resolved, That the president and secretary of said company be and are hereby authorized to execute a mortgage upon all the real estate, personal property and leaseholds owned by said Brookside Coal Company, said mortgage to be executed to William Krome, of Edwardsville, as security for the payment of the principal and interest of the afore-mentioned bonds. It was further

Resolved, That for the purpose of providing for the payment of the bonds aforementioned and authorized to be issued, together with all interest thereon, a sinking fund shall be created; that all rents for houses, or other real estate of the company, all proceeds of real estate sold, and one-quarter of one cent per bushel on all coal mined from under the lands owned by said company, shall be paid into the sinking fund, rents and the proceeds of real estate as soon as received, and the one-fourth of one cent per bushel on coal on or before the 17th day of each and every month; that William H. Krome shall be the custodian of this fund, and that whenever the directors of the Brookside Coal Company find a sufficient amount to its credit of said fund, they shall order the purchase of so many of the aforesaid bonds as will exhaust it, making provision, however, for the prompt payment of all interest at least six months in advance; that as soon as convenient insurance be obtained on all the dwell-

ing houses and other property of the company, loss if any payable to said Wm. H. Krome, in trust, for payment of said bonds and interest thereon.

MARTIN J. SCHOTT,

WM. KOMBRINK,

WM. FREUDENAU,

Directors."

Martin J. Schott, the holder of the senior mortgage at that meeting, was a director of the company, and also the treasurer. The record of the company was not produced, nor was its secretary or president called as a witness, nor was it shown the books were not in existence. The resolutions were recorded in the records of Madison county, and that record was offered in evidence and excluded.

The appellants further sought to prove the statements and declarations made at that·meeting of the directors of the Brookside Coal Company, by the president of the company, and that it was there represented by him that the total indebtedness, including the mortgage to Schott, did not exceed $14,000, and the purpose of the issuing the bonds secured by the Krome mortgage was to take up all the indebtedness of the company; and it is insisted by appellants that by reason of such action by the board of directors, Schott being one, he is estopped from claiming his mortgage is prior to that of appellants.

The decree of the court finds the mortgage to Martin J. Schott a first and superior lien, and finds that the notes secured therein were assigned and delivered before maturity to Louis Kammerer, trustee for Louis Schlosstein, for value, and that Otto G. Schott is, and was, at the time of filing the supplemental bill, the legal and equitable holder of the notes, he having acquired the interest and title of Schlosstein therein, and that there is due Otto G. Schott on said notes and mortgages, $7,079.99. The decree then recites the deed of trust to Krome, and finds, as to the ownership of bonds secured by such deed of trust, that said deed of trust is a second lien upon the property mentioned in the mortgage made to Martin J. Schott, and is subject to the lien first created, but that the

Krome mortgage is a first lien on the property therein described, and not mentioned in the Schott mortgage, and is a lien. upon all the property described in the deed of trust superior to the lien of the mortgage made to Evans. Further finds that the receiver sold all the property, covered by the mortgage and deed of trust, and that there is in his hands the net sum of $16,148.16, realized from such sale, after the payment of costs and expenses of sale. Further finds that the property covered by the Schott mortgage is worth $10,000; that Otto G. Schott is entitled to receive full payment of the sum of $7,079.99 out of said sum of $16,148.16, after the payment of costs, and that the holders of bonds secured by the deed of trust to Krome are entitled to the balance of said sum of $16,148.16, *pro rata*, according to the amounts found due to them respectively. The several judgments mentioned in the bill, cross-bill and answers, and the mortgage of John O. Evans, Sr., and the chattel mortgage as to him, are postponed to the mortgage of Schott and the deed of trust to Krome, and are not entitled to any part of said sum of $16,148.16. Decrees that the receiver pay, first, the unpaid costs; next, to the solicitor of Otto G. Schott, the sum found due him with interest from the date of the decree, and that he pay the balance of the sum in his hands to bond-holders, naming them, *pro rata*, according to the amounts due them respectively. An appeal is prayed, and in the assignment of errors the admission of the improper evidence on the part of appellees and the rejection of the evidence offered by appellants is assigned as error, as also the decree finding the lien of Otto G. Schott a superior lien to that of the holders of the bonds, under the Krome deed of trust.

Messrs. KROME & HADLEY, JOHN G. IRWIN and GEORGE F. McNULTY, for appellants.

Messrs. DALE & BRADSHAW and WISE & DAVIS, for appellees.

PHILLIPS, J. The only question made by this record arises upon the decree made upon the final hearing and ruling of

the court with reference to the admissibility of certain evidence offered by appellants. The principal question to be determined from this record is, in what order the creditors of the Brookside Coal Company, whose claims are secured by mortgage, deed of trust, or judgment liens, shall be paid. The order of seniority and priority in point of time is, first, the mortgage, of date October 19, 1881, to Martin J. Schott; second, the deed of trust made to William H. Krome, trustee, of date June 17, 1882; third, the mortgage to John O. Evans, Sr., made January 21, 1885, and the chattel mortgage of same date made to said John O. Evans, Sr.; and fourth, the judgments in the order of time as made in the statement of facts; there is no question as to the validity of either of the mortgages on the realty of the company, nor of the judgments. Martin J. Schott, although a director of this company and its treasurer, had a right to loan money to the company, and take a mortgage to secure the same, on the same terms and like manner as other persons. Merrick v. Peru Coal Co., 61 Ill. 472; Harts et al. v. Brown et al., 77 Ill. 226.

At the time of the meeting of the board of directors and at the date of the execution of the mortgage to Krome, none of the notes secured by the mortgage to Schott were due. His mortgage was recorded, and that record was notice of his lien to all persons dealing with the property. Krome, the trustee in the second mortgage, had actual notice of the mortgage to Schott. That mortgage being made to one having a right to deal with the company, executed in good faith, for a valuable consideration, and duly recorded, a superior lien of which Krome had actual notice, is sought to be set aside and made inferior to the Krome mortgage. To do this appellants offered the declaration of Freudenau, the president of the company, made at the time of the execution of the Krome mortgage, that it would be a prior lien. While Freudenau as president of the company might bind the company by his declarations, he being the agent of the company, and the declarations made within the scope of the agency, yet we fail to see wherein he, as agent of the company could by his declarations, within the scope of his agency, bind a stranger who had dealt with the company in good faith, and such declarations

Mullanphy Bank v. Schott.

of the company's agent being to the prejudice of that stranger so dealing with the company. Schott's relation to the company as mortgagee was the same as that of a stranger. The declarations of Freudenau, even if made in the presence of Schott, would not prejudice Schott's priority, as the purpose of executing a mortgage to pay off all indebtedness of every character, including that of Schott, if carried out and payment of the notes to Schott made, would have the effect of satisfying his lien, and it being extinguished, the mortgage to Krome would have become a first lien. But those declarations made by Freudenau, the president of the company, could not make Schott liable for the appropriation of the money received on the sale of the bonds secured by the Krome mortgage even though he was a director of the company. What was claimed to be the resolutions adopted by the Brookside Coal & Coke Company offered in evidence, was the records of Madison county showing the recording of certain resolutions.

The secretary of the company was not called as a witness nor was the president. The evidence showed an examination of the office of the company was made, and no records of the board of directors were found of the meeting at the time the Krome mortgage was made. The evidence clearly showed that a careful examination was made of all persons and places where the records of the company might be, save an inquiry of the secretary and president of that company. While the evidence shows that the president and secretary were both non-residents, yet from this evidence the conviction must arise that either the president or secretary was in possession of the books.

These resolutions being recorded do not make them bear the character of a deed or mortgage, the recording of which is provided for by statute, and the record or certified copies made evidence in certain cases. The search for the records of the company does not, from the evidence in the record, appear to have been sufficiently made to authorize the admission of the secondary evidence offered; while the resolutions recited, "That for the purpose of paying the floating

indebtedness now due against the real estate owned by the Brookside Coal Company," etc., the bonds of the company to the amount of $15,000 should be issued, and by those resolutions, for the payment of the bonds with the interest thereon, a sinking fund was provided; and for its creation the rents of houses and other real estate, the proceeds of real estate sold, and one quarter of one cent per bushel on all coal mined from under the lands, was set apart.

By these resolutions and the bonds issued and the mortgage to secure the same there is no declaration or recital of that being a first mortgage and to have priority of all others. Nor can the record—"that for the purpose of paying the floating indebtedness now due against the real estate owned by the company"—be held as declaratory of a purpose of paying a mortgage indebtedness not yet due. Neither can the term, "floating indebtedness" be held to mean and include the amount of a debt secured by mortgage on the real estate of the company. In The People ex rel. Cooke v. Wood, 71 N. Y. 371, where a private act had been passed empowering the trustees of the village of Saratoga Springs to issue bonds and raise money to pay the floating debt of the village, the court in defining that term held, "By the term 'floating debt' is meant that mass of lawful and valid claims against the corporation, for the payment of which there is no money in the corporation treasury specially designed, nor any taxation or other means of providing money to pay, particularly provided." The term "floating indebtedness" as used in these resolutions, must be held to mean that mass of lawful and valid claims against that corporation due and unsecured, and for the payment of which there is no money in the corporation treasury, and which, by their attempted collection, would embarrass the company and compel it to wind up its business. The property of the company was chiefly realty and the terms used can not be held to be understood as providing a fund for the payment of this mortgage by issuing those bonds. And no act of Schott as director or as treasurer, so far as shown by the evidence, can be held to estop his assertion of the priority of his mortgage.

It is, however, insisted that of the bonds issued and secured by the mortgage to Krome, ten bonds of $500 each were delivered to Schott and he is thereby estopped by reason of having received the same. While the evidence shows that the president of the company delivered to Schott ten bonds, yet they were delivered with the request he should sell the same and apply the proceeds to the payment of his claim, and on his reporting to Freudenau his inability to sell those bonds, he was, by the president of the company, requested to return them to him, and that was done. A part of those bonds thus returned are now held by, and are sought to be collected in this proceeding by the appellant.

No part of the proceeds having been received by the prior mortgagee, and being delivered to him to sell when he returned them to the president of the company from whom he received them, it can not be held that he was thereby in any way estopped from the assertion of his claim as a prior lien.

The evidence in this record discloses no element of fraudulent misrepresentation or concealment on the part of Schott, nor does the evidence show any change of purpose on the part of the subsequent mortgagees or bondholders induced by his acts. In Davidson v. Young, 38 Ill. 146, it was ruled—"the doctrine of estoppel *in pais* or equitable estoppel is based upon the fraudulent purpose and the fraudulent results. If the element of fraud is wanting there is no estoppel; as, if both parties were equally cognizant of the facts, and declarations or silence of the one party produced no change in the conduct of the other, he acting solely on his own judgment. There must be deception, and change of conduct in consequence, in order to estop the party from showing the truth." To the same effect is Powell et al. v. Rogers, 105 Ill. 318. It is further assigned as error that certain affidavits made by Martin J. Schott were offered by appellant for the purpose of showing he was an officer of the company, and had examined into the condition of the company, and had attended the meetings of the board of directors. The fact that he was a director of the company and its treas-

urer was already shown and was in no manner in controversy. That he had investigated the condition of the company would not in any way affect the question here at issue, unless he was guilty of some fraudulent act or concealment to the prejudice of the appellants. The company continued in business after the execution of the second mortgage and the evidence fails to show that Martin J. Schott knew of any indebtedness other than was stated by Freudenau. Nor does the evidence show that the indebtedness existing at the time of execution of second mortgage was not correctly stated. The affidavits were not contradictory of anything stated by Schott as a witness, and we fail to see wherein they were relevant testimony. There was no error in sustaining the objection to the affida-vits going in evidence. We have not deemed it necessary to comment on the relation of Martin J. Schott to Otto G. Schott in the purchase of the notes in the supplemental bill sought to be foreclosed, which were purchased from Raisseur as trustee for Schlosstein, as what we have already said necessarily disposes of that question. Finding no error in the exclusion of evidence and there being no element of estoppel *in pais* nor error in the relief decreed, the decree is affirmed.

*Decree affirmed.*